**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE MINDBODY, INC. SECURITIES LITIGATION | Case No. 1:19-cv-08331-VEC |

**CO-LEAD PLAINTIFFS' SUR-REPLY IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

Implicitly recognizing that the Motion[1] could not succeed as filed, due to the total failure to address certain key facts and legal theories alleged in the AC, Defendants' futilely tried to cure their Motion in the Reply, ECF No. 42.  The Court granted Plaintiffs' request to file this Sur-Reply (ECF No. 44) but may still disregard Defendants' untimely arguments.  *E.g.*, *Mayer v. Neurological Surgery, P.C.*, 2016 WL 347329, at *4 (E.D.N.Y. Jan. 28, 2016) (holding new arguments in reply "need not be considered," permitting sur-reply, but rejecting those new arguments, because crediting them would "encourage the raising of new arguments in a reply").

## I.        Defendants Have Conceded Their COVID-19 Argument Is Without Merit

The Reply argued the case should be halted because Mindbody, like every Class member, has been negatively affected by the pandemic.  Reply 1. n.3.  Defendants admit in their letter to the Court opposing this Sur-Reply that this argument should be disregarded, asserting this part of their *brief* was not directed to the Court and was meant to encourage Plaintiffs to voluntarily dismiss, and abandon their duties to the Class.  ECF No. 45 at 2 n.3.  While this explanation misstates their true rhetorical goals (*see* ECF No. 43 at 2), the issue needs no further attention.

## II.       Defendants' Attack on Plaintiffs' Section 14(a) Standing Is Futile and Misplaced

In their new attack on Plaintiffs' Section 14(a) claims, Defendants misstate the black-and-white facts.  The Reply claimed that "Plaintiffs (and the putative class) sold their shares before the Merger vote." *Id.* (citing ¶¶1, 37-38, 336).  But ¶¶37-38 state Plaintiffs held shares on the Merger's record date (not that they sold then) and ¶¶1, 336 state the Class definition, which *includes* the date of the Merger vote, which took place at 9:00am (ECF No. 37-1 at 4).  Nothing suggests Plaintiffs did not hold through the vote and the Class definition includes people that did.  But in any case, the record date here is dispositive for standing purposes because even

---

[1]  Unless otherwise stated, terms are cited and defined as in Plaintiff's Opposition brief, ECF No. 39.  The Opposition is cited as "Opp. __" and the Reply as "Reply __."  All emphasis has been added.

1

Defendants' case agrees that investors who held on the "record date" are "permitted to bring Section 14(a) claims." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 241 (S.D.N.Y. 2004). Plaintiffs held on the record date (¶¶37-38) and clearly have standing.

However, Defendants try to add an extra *de facto* standing rule under the guise of disputing materiality. They note that the materiality inquiry asks if a "reasonable investor" would find the information "important in deciding how to vote," and jump to the conclusion that Plaintiffs have erred by not proving "their voting decisions were impacted." Reply 24. Defendants are confused. The materiality inquiry is an "objective test" about what information a *reasonable investor* would find important, it has nothing to do with Plaintiffs individually or whether "votes were affected." *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 383 (1970).[2]

### III.    Defendants' Delaware Law Disclosure Duties Support Federal Omission Claims

As explained below, omissions in the face of state-law disclosure duties are actionable under §14(a) and §10(b), and Defendants' omissions violated Delaware law disclosure duties.

#### A.    Defendants Violated Their Disclosure Duties Under Delaware Law

In addition to other duties (*e.g.,* duty to update and duty of completeness) discussed in prior briefing, there is a Delaware law "duty" requiring directors to provide "accurate and complete information material to [any] transaction . . . presented to" shareholders. *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). The question under Delaware law is whether omitted information was material, and as to most allegations, the Reply's responses merely rehash arguments the Opposition already refuted. *See* Opp. 29, 32, 43. On the issue of the 4Q18 results, Defendants argue for a *per se* rule that unaudited financials are immaterial. Reply 12.

A *per se* rule would be anomalous since materiality is a "mixed question of law and fact."

---

[2] Defendants do not challenge reliance, which is "not an element" of §14(a). William Prifti, SECURITIES: PUBLIC AND PRIVATE OFFERINGS § 12:11 (2019 ed.). Plaintiffs reserve all arguments on reliance/causation.

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  Delaware state law cases confirm the materiality of Defendants' omissions.  *See In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *30 (Del. Ch. Aug. 27, 2015) (duty breached before merger; defendants withheld "up-to-date information about . . . financial performance"); *In re Tangoe, Inc. S'holders Litig.*, 2018 WL 6074435, at *10 (Del. Ch. Nov. 20, 2018) (duty breached before merger; defendants withheld update about previously released unaudited results); *O'Reilly v. Transworld Healthcare Inc.*, 745 A.2d 902, 927 (Del. Ch. 1999) (before merger, investors "must receive timely financial data"); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010) (before merger, "management's best estimate of future cash flow" is "clearly material").

Defendants' two cases offer them no support.  *Skeen v. Jo-Ann Stores, Inc.*, merely held that a generic request for "more current financials" was immaterial where plaintiff alleged "no facts suggesting" the existence of such information, or that it differed from what was disclosed. 750 A.2d 1170, 1174 (Del. 2000).  The AC alleges exactly what was missing in *Skeen*.  ¶195. Defendants' other case merely involved a post-trial fact finding where the omitted fact was found to be immaterial to a director election.  *Red Oak Fund, L.P. v. Digirad Corp*, 2013 WL 5740103 (Del. Ch. Oct. 23, 2013).  This case cuts in Plaintiffs' favor as it noted if, like here, "a company intentionally delayed releasing financial results" until after a vote, even if it is "still before the relevant SEC deadline," that would "warrant serious judicial scrutiny."  *Id*. at *16 n.187. [3]

### B.    Defendants' Omissions Violated Federal Law

Notwithstanding their state-law disclosure duties, Defendants advance the extraordinary notion that they can omit facts they are legally obligated to disclose, without violating securities

---

[3] The Motion's footnote argument that releasing unaudited results could create "potential legal exposure" (MtD 30 n.16), was refuted (Opp. 42 n.15), and then pushed to hyperbole by the Reply's claim that the results "could not" be released (Reply 11).  The cited regulations say no such thing and any purported risk of misleading is cured by a properly labeled release or a properly qualified qualitative disclosure.

3

laws. Reply 9-10. Defendants support this notion by citing two disclosure duties (insider trading and statutes/regulations) to imply these are the only duties that can support securities claims. *Id.* But, the "duty to disclose may be established by *state* or federal law" (*Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 467 n. 9 (2d Cir. 2013)), and fiduciary duty law is clearly state law. *E.g.*, *S.E.C. v. DiBella*, 587 F.3d 553, 563 (2d Cir. 2009) (omission under § 10(b) and finding that defendants' "fiduciary" status gave rise to "duty to disclose"); *White v. Abrams*, 495 F.2d 724, 736 (9th Cir. 1974) (omission under § 10(b) for breach of disclosure duty imposed by fiduciary relationship); *In re Towers Fin. Corp. Noteholders Litig.*, 1995 WL 571888, at \*16 (S.D.N.Y. Sept. 20, 1995) (§ 10(b) omissions arise if one had a "fiduciary duty running to the plaintiff").

Examining Defendants' recognition of insider trading duties is instructive. Reply 10. Insider trading disclosure duties arise "from the existence of a fiduciary relationship." *Dirks v. S.E.C.*, 463 U.S. 646, 654 (1983). There is no federal common law of fiduciary duty—the duty arises from state law. *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990) (Easterbrook J.) ("securities laws do not impose general duties to speak . . . these must usually be located in state law"). There is no basis to view the duty to disclose prior to a merger differently than the failure to disclose prior to insider trades. Plaintiffs do not suggest that every breached fiduciary duty gives rise to securities claims; failure to disclose a breached of duty (*i.e.*, to self-flagellate), is not actionable under federal (or state) law. However, in the narrow circumstances where state law imposes a *disclosure duty*, violations of those duties are actionable securities law omissions.

## IV.   The FP&A Analyst's Text and Internal Forecasts

The Reply finally addressed the FP&A analyst's smoking gun text, saying "all" that is alleged is that Mindbody was "on track to hit [its] forecast." Reply 2. This is false; the text said:

> ***The philosophy is to forecast for the quarter not the month***. We use the first month to identify if there is anything material that would affect the quarter. ***We minimally beat in October*** – that

4

> tells me **we are on track to hit our forecast**. . . .  The question is – did the assumptions we saw in month 1 cause us to think our assumptions for month 2 and 3 need to be revised – **I do not know of anything in the flash [revenue report] that would materially change our assumptions for the preceding months.**

¶120.  Defendants claim to not know "what type of forecast" is referenced (Reply 2), but as the AC stated, in context, a "flash" refers to a report of key metrics including revenue.  ¶19(a) n.4. Defendants claim to not know the "time period" of this forecast (Reply 2), but the text was sent **three days** before the Cut and refers to the "quarter," "October," and the following two months.

The Reply also argues the AC does not allege this text was sent to Defendants.  *Id.*  This is irrelevant—the text's significance is not in showing Defendants' knowledge of this FP&A analyst's comments—it is significant because it shows there was no basis for the Cut.  The Opposition explains that Defendants cannot deny knowledge of the true internal figures, which they publicly spoke about and which are the core operation of the Company.  Opp. 23-24.  Even in the Reply, Defendants have not denied knowing the true forecasts and related figures.

The other previously unaddressed smoking gun shows that during 4Q18, the internal forecast was $68 million—right in the middle of the pre-Cut guidance range.  ¶¶19(c).  This meant that the true internal forecast for 4Q18 was higher than what Defendants told the market when they intentionally Cut the guidance down to depress the stock price.  Defendants argue that the email showing this forecast was sent after the Cut and forecasts could have been revised. Reply 3.  However, facts must be weighed "collectively," and inferences need not be "irrefutable," but must merely be "at least as compelling" as the alternative, with ties going to the plaintiff.  *See* Opp. at 9.  Defendants' seesaw theory is implausible—just before the Cut the FP&A text said there was no basis to lower forecasts and in January Mindbody was still forecasting at the pre-Cut levels.  The only plausible inference is that internal forecasts remained the same both before and after the Cut—and the Cut was a lie.

5

DATED:  May 22, 2020                    LABATON SUCHAROW LLP

By:  */s/ Carol C. Villegas*

Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
dschwartz@labaton.com
jbissell-linsk@labaton.com

***Lead Counsel for Lead Plaintiffs Walleye Trading
LLC and Walleye Opportunities Master Fund Ltd.,
and Lead Counsel for the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by email to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Carol C. Villegas*
Carol C. Villegas