# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE MINDBODY, INC. SECURITIES
LITIGATION

Index No. 1:19-cv-08331-VEC

**ORAL ARGUMENT REQUESTED**

## SUR-SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Patrick Gibbs
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
(650) 843-5535

Sarah M. Lightdale
Brian M. French
Daniel P. Roy III
COOLEY LLP
55 Hudson Yards, 44th Floor
New York, New York 10001
(212) 479-6374

*Attorneys for Defendant Eric Liaw*

Matthew Solum, P.C.
John Del Monaco
Ian C. Spain
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

*Attorneys for Defendants MINDBODY, Inc.,
Richard L. Stollmeyer, and Brett White*

As explained in Defendants' May 8, 2020 letter, Plaintiffs' suggestion that any part of the Reply was improper is wrong.  (Dkt. No. 45.)  Plaintiffs' challenges to the Reply all lack merit.

## I.    Misdirection Does Not and Cannot Cure Plaintiffs' Failure to Plead Materiality.

Plaintiffs mischaracterize the Reply as attempting to add "an extra *de facto* standing rule under the guise of disputing materiality."  (Sur-Rep. at 2.)  Not so.  Defendants are making a different point:  Plaintiffs have not alleged that the putative class's "voting decisions were impacted by any alleged misstatement or omission."  (Rep. at 24.)  Plaintiffs have no answer other than to say that the standard for assessing materiality is objective.  (Sur-Rep. at 2.)  Of course, but that misses the point.  Neither Plaintiffs' Opposition, nor their Sur-Reply, argues that any of the purported misstatements or omissions were substantially likely to impact a reasonable shareholder's voting decision.  Instead, Plaintiffs treat materiality as an abstract concept divorced from the critical question of whether a voting decision was impacted.  (*See* Opp. at 45-47.)  That is wrong *de jure*.  (*See* Mot. at 25-26, 28-35; Rep. at 10-13, 24.)

## II.    Plaintiffs Fail to Plead Any Violations of Delaware or Federal Disclosure Duties.

Plaintiffs' argument that Delaware law imposed a duty to disclose the preliminary, unaudited Q4 revenue is equally unavailing.  None of Plaintiffs' cases hold that a company has a duty to pre-release preliminary unaudited financial results ahead of a shareholder vote and before federally mandated deadlines, let alone a fraction of that financial information (*i.e.*, just unaudited revenue).  For example, *O'Reilly v. Transworld Healthcare Inc.* addressed whether the financial data the shareholders possessed at the time of the vote was "*materially* stale" because it was five months old by the time of the vote.  745 A.2d 902, 927 (Del. Ch. 1999).  The court dismissed the plaintiff's claim that the most recent quarter's and full year financial data needed to be disclosed in advance of the federally mandated deadline, noting that there was no allegation as to what additional information existed, nor how it compared to the allegedly "stale" data.  *Id.*

*O'Reilly* did not endorse any early disclosure of preliminary financial results.[1]  Plaintiffs also assert that *Red Oak Fund, L.P. v. Digirad Corp.*, 2013 WL 5740103 (Del. Ch. Oct. 23, 2013), "cuts in Plaintiffs' favor."  (Sur-Rep. at 3.)  Not so.  *Red Oak* directly contradicts Plaintiffs' theory:  "[n]o other provision of the federal securities laws, Delaware law, or [the company's] governing documents mandate[d] an earlier deadline" for the release of financial information than the applicable federally mandated deadline.  2013 WL 5740103, at *14.[2]

Nor have Plaintiffs pled a federal law violation.  Their contention that Defendants cannot "omit facts they are obligated to disclose" is circular.  (Sur-Rep. at 3-4.)[3]  No law imposes a duty to pre-release partial financial information ahead of federally mandated deadlines.  With respect to Liaw, even if that were not true, Plaintiffs have not shown that either of the two narrow exceptions from which "pure omission" liability flow apply, instead restating (still incorrectly) that if state law imposes a duty to disclose, then so does Rule 10b-5.  (*See* Rep. at 9-10.)[4]

## III.    Plaintiffs' Text Message and Email Allegations Are Irrelevant.

Plaintiffs advance several nonsensical arguments in seeking to transform a text message

---

[1]    Plaintiffs' other cases are inapposite.  *In re Tangoe, Inc. Stockholders Litigation* related to the nondisclosure of "***audited*** financial statements" for the preceding four years.  2018 WL 6074435, at *10 (Del. Ch. Nov. 20, 2018) (emphasis added).  *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.* addressed the "inexplicable" decision to omit "free cash flow estimates" from the disclosed management projections, not the disclosure of preliminary prior-quarter data.  11 A.3d 1175, 1178 (Del. Ch. 2010).  And even further afield, *In re Dole Food Co., Inc. Stockholder Litigation* addressed the need to provide "updated management forecasts" to the board committee overseeing the transaction, not shareholders.  2015 WL 5052214, at *30 (Del. Ch. Aug. 27, 2015).

[2]    Plaintiffs also mischaracterize *dicta* from a footnote stating that "intentional[] delay[]" by directors might "warrant serious judicial scrutiny over whether the vote should be found valid."  *Id.* at *16 n.187.  That *dicta* pertained to whether intentional delay might permit a validity challenge to a vote under Delaware statutory law, not whether it would implicate a duty of disclosure.  And nothing in that *dicta* grappled with the disclosure of a portion or fraction of the unaudited preliminary financial information, which would give the market an incomplete (and potentially misleading) picture of the company's financial performance.

[3]    Plaintiffs base this argument, which they did not seek leave to brief (*see* Dkt. No. 44), on a blatant misreading of Defendants' explanation that Plaintiffs have not stated a "pure omission" claim *against Liaw*.  (Rep. at 9-10.)

[4]    The *Chiarella* exception applies only to claims brought by direct counterparties and/or their confederates, not stockholder classes.  (*See* Rep. at 9-10 & n.22.)  Despite this, Plaintiffs still rely exclusively on *Chiarella* claim precedent.  *See SEC. v. DiBella*, 587 F.3d 553, 563 (2d Cir. 2009) (claim against counterparty confederate); *White v. Abrams*, 495 F.2d 724, 736 (9th Cir. 1974) (same); *In re Towers Fin. Corp. Noteholders Litig.*, 1995 WL 571888, at *18 (S.D.N.Y. Sept. 20, 1995) (claims against counterparties and associated professionals).

and an email into supposed "smoking gun" support for their theory that the Q4 revenue guidance was false. (Sur-Rep. at 4-5.) Plaintiffs argue that the content and timing of the text indicate that it pertained to a revenue forecast for Q4. But even if the Court were to make that inference, Plaintiffs still have not explained the role of the FP&A analyst, nor alleged anything that would plausibly suggest that the analyst was referencing the Q4 revenue forecast for *the Company*, as opposed to a forecast for a business unit, product line, or something else. (*See* Rep. at 2-3.) And Plaintiffs' allegations never actually establish that the "forecast" referenced was inconsistent with the Q4 guidance reported to the market, or, even if it was, that there were not other forecasts that cut the other way. (*See* Rep. at 3.) In fact, Plaintiffs do not even allege or argue that any of the Defendants received the text. Accordingly, there is no basis to conclude, as Plaintiffs contend, that the text "shows there was no basis for the Cut." (Sur-Rep. at 5.)[5]

Likewise, Plaintiffs seek to defend their interpretation of an email from January 2019—two months after the Q4 guidance was issued and after the close of the Company's fourth quarter—referencing an "internal revenue forecast" of $68 million. (Sur-Rep. at 5.) Plaintiffs argue that the Court should find that "[t]he only plausible inference" is that the January "internal revenue forecast" was the same as an early-November unspecified "forecast." (*Id.*) But, again, Plaintiffs have not plausibly alleged that the earlier "forecast" was for revenue or, if it was, that it was the only such forecast, or, if it was, that it did not change over the subsequent months. (*See* Rep. at 2-3.) And, of course, Plaintiffs must satisfy the PSLRA's *strong* inference requirement with respect to this allegation. (Rep. at 2.) Nor do Plaintiffs compellingly argue why it is "implausible" that Mindbody might have had multiple or evolving forecasts. Rather, the FP&A analyst text they rely upon shows that Mindbody did re-evaluate its forecasting. (*See* AC ¶ 120.)

---

[5] Plaintiffs argue "Defendants have not denied knowing the true forecasts and related figures." (Sur-Rep. at 5.) That is nonsense. This is a motion to dismiss, not an evidentiary merits argument. (*See* Mot. at 3 n.2.)

Respectfully submitted,

Dated:  June 4, 2020

/s/ Matthew Solum

Matthew Solum, P.C.
John Del Monaco
Ian C. Spain
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
ian.spain@kirkland.com

*Attorneys for Defendants MINDBODY, Inc.,*
*Richard L. Stollmeyer, and Brett White*

Patrick Gibbs
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
(650) 843-5535

Sarah M. Lightdale
Brian M. French
Daniel P. Roy III
COOLEY LLP
55 Hudson Yards, 44th Floor
New York, New York 10001
(212) 479-6374

*Attorneys for Defendant Eric Liaw*

-4-