# Labaton Sucharow

**Carol C. Villegas**
Partner
212 907 0824 direct
212 907 0700 main
212 883 7524 fax
cvillegas@labaton.com

**New York Office**
140 Broadway
New York, NY 10005

August 25, 2020

**VIA ECF**

Judge Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 443
New York, NY 10007

RE:             *In re Mindbody, Inc. Securities Litigation*, No. 19-cv-08331-VEC

Dear Judge Caproni:

I write on behalf of Co-Lead Plaintiffs ("Plaintiffs") in response to Defendants' letter (ECF No. 50), submitting the Fifth Circuit's opinion in *Heinze v. Tesco Corp.*, No. 19-20298, 2020 WL 4814094 (5th Cir. Aug. 19, 2020) ("*Heinze*"). Defendants cite *Heinze* for three propositions.

**First**, as Defendants explain, *Heinze* held that investors were not misled by descriptions of a premium as "significant" (*id.* at *3), rejecting the plaintiff's theory that this description was untrue solely because the premium was below average for public mergers. Ex. A (*Heinze* Compl.) ¶ 98. The court noted that investors could judge the size of the premium based on public information. *Heinze,* at *3. Here, Plaintiffs were deprived of the ability to make that very assessment, because the relevant public information (*i.e.*, the stock price), was ***artificially deflated by Defendants***. So, the question is not whether the mathematical premium in Mindbody was a large number as compared to other public mergers, but whether it was misleading to refer to that premium as "significant," since it was tethered to a stock price that was artificially deflated. *See* Compl., ECF No. 22 ¶¶ 219-20; MtD Opp., ECF No. 39 at 34-35 (citing cases holding similar adjectives to be material, not puffery). *Heinze* actually helps to illustrate, by contrast, that Plaintiffs' allegations are strong and specific.

**Second**, Defendants argue that *Heinze* recognized that "pure omission[s]" are inactionable under § 14(a). This language in *Heinze* was directed only at the principle that "plaintiff's desire to know information"—***without*** an alleged duty to disclose—is not enough to state a claim. *Heinze*, at *6. If it held otherwise, it would be irreconcilable with law in the Second Circuit that omissions violate § 14(a) when the defendant is "subject to a duty to disclose the omitted facts." *Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 561 (S.D.N.Y. 2017); *see e.g., Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 991, 995 (2d. Cir. 1988) (finding omissions violated § 14(a)). Defendants previously admitted that omissions are actionable where there is a "duty to disclose," and instead only denied violating a relevant duty. MtD, ECF No. 36, at 28. Plaintiffs alleged that Delaware law imposes disclosure duties. *E.g.*, Compl. ECF No. 22 ¶¶ 245, 329; MtD Opp., ECF No. 39 at 44-45. *Heinze,* which involved an Alberta-incorporated entity, does not address this, or any other disclosure duty.

# Labaton Sucharow

August 25, 2020
Page 2

Plaintiffs also alleged actionable omissions based on materially misleading statements and a failure to update statements.  For example, Plaintiffs argued that the failure to disclose the 4Q18 results was actionable and rendered the outstanding guidance misleading under well-established Second Circuit law.  MtD Opp., ECF No. 39 at 43-44 (collecting cases regarding duty to update before a merger); *cf. id.* (citing *Blum v. Semiconductor Packaging Materials Co., Inc.*, 1998 WL 254035, *2 (E.D.Pa. May 5, 1998) (holding that while there is "no general duty" to update, an "exception" to that rule occurs when a company faces a major change, such as when it is faced with a "takeover attempt").  *Heinze* recognizes that omissions that render statements misleading are actionable under § 14(a), and therefore, is no challenge to these allegations.  *See Heinze*, at *6-7.

**Third**, Defendants pluck a quote out of context to argue that "the securities laws are focused on discouraging 'unduly *optimistic* representations of a company's worth,' not conservative forecasts."  ECF No. 50 at 1 (quoting *Heinze*, at *5). *Heinze* certainly could not suggest the securities laws are more focused on price inflation than deflation, as Defendants assert, because this would be directly at odds with landmark Supreme Court cases which stand for the proposition that depressing the price of a stock may be actionable securities fraud.  *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972) (actionable omission *hid true higher* value of stock); *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988) (false denials of merger negotiations *depressed* price).  *Heinze* offered a criticism of whether "rank speculation" could form the basis of a claim, not a commentary on whether optimistic statements or pessimistic statements should be actionable.  *Heinze,* at *4.

*Heinze* is also factually distinct.  It dealt with whether projections were misleading because they did not adopt plaintiff's "prophecy of oil prices increasing."  *Id.*   Here, Plaintiffs do not rely on any such speculative theory or difference in opinion.  Rather, Plaintiffs proffer particularized allegations showing that Defendants artificially depressed Mindbody's stock price, including by announcing lowered guidance that was inconsistent with their true expectations.  *E.g.*, MtD Opp., ECF No. 39 at 22-35.

Respectfully submitted,

LABATON SUCHAROW LLP

By:  /s/ Carol C. Villegas
Carol C. Villegas
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com

*Lead Counsel for Co-Lead Plaintiffs Walleye Trading LLC and Walleye Opportunities Master Fund Ltd., and Lead Counsel for the Class*