# EXHIBIT 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MINDBODY, INC. SECURITIES LITIGATION | Civil Action No. 1:19-cv-08331-VEC |

**LEAD PLAINTIFFS' FIRST SET OF**
**REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO ALL**
**DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, and the Local Civil Rules for the Southern District of New York, and subject to the definitions, instructions, and Relevant Time Period set forth below, Lead Plaintiffs Walleye Trading LLC and Walleye Opportunities Master Fund Ltd. ("Lead Plaintiffs") hereby request that Mindbody, Inc., ("Mindbody" or the "Company"), Richard L. Stollmeyer ("Stollmeyer"), Brett White ("White"), and Eric Liaw ("Liaw," collectively, "Defendants") produce for inspection and copying the Documents designated under the heading "DOCUMENTS REQUESTED" below.

Lead Plaintiffs request that responses and objections to this request be made by November 23, 2020 (ECF No. 34) and that production be made as soon as practicable thereafter, and within 30 days from the service of these requests, at the latest.

# INSTRUCTIONS

1. The terms "all", "any", and "each" shall each be construed as encompassing any and all.

2. The terms "and" and "or" shall be construed either disjunctively or conjunctively as to render each request more broad, rather than more narrow.

3. The use of the singular form of any word includes the plural and vice versa, as to render each request more broad, rather than more narrow.

4. A request for a Document shall be deemed to include a request for any non-identical copies or drafts of such Documents, as well as transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document, in addition to the Document itself. All Documents are to be produced in the form, order, and manner in which they are maintained in the ordinary course of business. All labels or markings on binders, files, subfiles, dividers, tabs, or folders shall also be produced.

5. A request for a Document shall be deemed to include a request for any Documents in Defendants' possession, custody, or control, including in the possession, custody, or control of: (i) Mindbody's present and former executives, officers, directors, partners, Employees, agents, attorneys, accountants, consultants, advisors, and all other persons acting or purporting to act on behalf of, at the insistence of, or for the benefit of Mindbody; or (ii) other persons acting or purporting to act on behalf of, at the insistence of, or for the benefit of Stollmeyer, White, and Liaw.

6. If it is not possible to produce any Document called for by this request, or if any part of this request is objected to, the reasons for the failure to produce the Documents or the objection should be stated specifically as to all grounds.

7.      If any Document requested is withheld on the grounds of privilege or otherwise, Defendants shall provide a log with the following information concerning each Document or portion of a Document withheld:

(a)      A unique number for each entry on the log.

(a)      A Production ID or Bates Number for each entry on the log.

(b)      The type of Document (e.g., letter, memorandum, agreement, notes, letter, electronic mail).

(c)      The date of the Document or, if no date appears thereon, the approximate date the Document was prepared.  For emails, this should be the sent date of the Document and for other ESI this should be the last-modified or create date of the Document.

(d)      The name(s) and title(s) of the author(s) of the Document.  For emails, this should be populated with the metadata extracted from the "Email From" field associated with the file.  For other ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a Party may substitute the information contained in the "Custodian" metadata field.

(e)      The name(s) and title(s) of the recipient(s) of the Document.  For emails this should be populated with the metadata extracted from the "Email To" field associated with the file.  Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.  For emails, this shall include, in addition to the Recipient(s)' name(s), either (a) an email address for each recipient, or (b) information sufficient to identify their employer at that time.

(f)      The name and title of the custodian of the Document.

(g)    The identity of any other recipients of the Document that appear on the Document as having received a copy.

(h)    The identity of any attachments to the Documents and whether the attachments have been produced.

(i)    The general subject matter of the Document or Communication contained in the Document.

(j)    The nature of the privilege or immunity asserted, including the attorney and client involved, and the grounds for withholding the Document.

(k)    The number of pages of the Document.

8.    If Defendants have any reason to believe that any Documents requested were at one time in existence, but are no longer in their possession, custody, or control, please identify the Document(s) and state in detail for each Document: (a) the Document type; (b) a specific description of the subject matter of the Document; (c) the date upon which the Document ceased to exist; (d) the identity of each person having knowledge of the circumstances under which the Document ceased to exist; and (e) the identity of each person having knowledge or who had knowledge of the contents thereof.

9.    Subject to the terms of any agreement between the parties Governing the Use of ESI, all Documents should be Bates labeled and marked with appropriate confidentiality indications, and should be produced in single page Group IV TIFFs (except that Excel spreadsheets and PowerPoint presentations should be produced in native, with a "nativelink" file); with OCR at the document level; and with the following load files: LFP, OPT, and DAT. The following metadata should be provided: BEGDOC, ENDDOC, BEGATTACH, ENDATTACH, PageCt, Author, To, Cc, Bcc, Custodian, Date Sent, Time Sent, Subject,

FileName, Date Created, Time Created, DateLastMod, TimeLastMod, Date Accessed, Time Accessed, and MD5Hash.

10.    These requests for Documents shall be deemed to seek Documents as of the date hereof but shall be deemed to be continuing so as to require prompt amendment and supplementation to the extent permitted by FED. R. CIV. P. 26(e).

11.    If any Documents are in a foreign language, and Defendants have translations of, whether contemporaneously made, made at a later date, or made in connection with this lawsuit, Defendants shall provide both the Document and the translation as related Documents.

## **RELEVANT TIME PERIOD:**

1.    Unless otherwise noted in a specific request for production, all Documents requested are Documents dated, prepared, or referring to events that occurred during the period from January 1, 2016 to January 1, 2020 ("Relevant Time Period").

**DEFINITIONS**

1.      "Board of Directors" or "Board" means the Board of Directors of Mindbody during the Relevant Time Period and all committees and subcommittees of the Board of Directors.

2.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

3.      "Concerning" or "concerning" means relating to, referring to, describing, evidencing, or constituting.

4.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in FED. R. CIV. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.  The term Document includes within it any record of a Communication in any form.  For the avoidance of doubt, the term Document includes text messages, instant messaging of any form, and emails.

5.      "Earnings Call" or "Earnings Calls" refers to Mindbody's quarterly investor earnings conference calls.

6.      "Electronic data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Such data may include, but is not limited to, all text files (including word processing Documents), presentation files (such as PowerPoint), text messages (including SMS messages, Apple iMessaging, WhatsApp, or other similar forms of messaging), chat history, spreadsheets, electronic mail files

and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIFF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

7. "Electronically-Stored Information" or "ESI" - Unless otherwise superseded in this case by an Order Governing the Use of  Electronically-Stored Information, ESI is defined herein to include the following:

(a) all items covered by Fed. R. Civ. P. 34(a)(1)(A);

(b) information or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata (e.g., author, recipient, file creation date, file modification date, etc.);

(c) files, information, or data saved on backup tapes or hard drives;

(d)    internal or external web sites;

(e)    output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and

(f)    activity listings of electronic mail receipts and transmittals; and any and all items stored on computer memories, hard disks, USB flash drives, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited to, personal digital assistants (e.g., iPads), hand-held wireless devices (e.g., iPhones or any other phones or smartphones), or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein.

8.    "Employee" or "Employees" means any person who at any time during the Relevant Time Period or time period identified in the requests below acted or purported to act on behalf of an entity, or another person or persons including, but not limited to, all present and former officers, directors, executives, Board members, partners, principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity, person, or persons.

9.    "Financial Results" refer to any measures of financial performance of the types commonly appearing in corporate public filings, including the figures appearing in balance sheets, cash flow statement, and income statement, as well as any of the non-GAAP measures

Mindbody commonly disclosed, whether or not in final or draft form, covering a complete reporting period or not, and whether published or published.  For the avoidance of doubt, any figure regarding Mindbody's 4Q18 revenue constitutes Financial Results at any point of time that figure existed.

10.    "Financial Data" refers to any information regarding Mindbody's financial performance, including data tracking any financial transactions Mindbody engaged in, including the receipt of revenue from customers and any expenses.

11.    "Forecasts" refers to any Documents concerning projections, forecasts, expectations, or plans for Mindbody's future business operations of financial performance, including internal targets and publicly stated guidance.

12.    "Go-Shop" refers to the go-shop provision in the Merger Agreement between Vista and Mindbody.

13.    "Individual Defendants" refers to Stollmeyer, White, and Liaw.

14.    "Involving," or "involving," when used to describe communications, means any communication which the person(s) at issue participated in any degree, either as speaker or listener, recipient, sender, or copied as a "cc" or "bcc" recipient.

15.    "Negotiations" refers to the discussion, communications, or dialogue of any agreement or contract or exchange, or potential agreement or potential contract or potential exchange, including discussions pertaining to future arrangements or potential future arrangements.

16.    "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

17.    "Privatization" refers to the acquisition of Mindbody by Vista which resulted in private ownership, including shareholder voting, any Negotiation with Vista or any other potential acquirer, any work performed by Qatalyst related to the transaction, any work performed by the Board or its members or committees regarding the transaction, and any other events that were materially related to the transaction.

18.    "SEC" refers to the United States Securities and Exchange Commission.

19.    "Senior Management" includes the Individual Defendants and any officer of Mindbody, as well as any past or present Mindbody Employee who directly reports/reported to: (i) any of the Individual Defendants; or (ii) any officer of Mindbody, including the Chief Financial Officer(s), Chief Operating Officer(s), Chief Commercial Officer, Chief Compliance Officer, Chief Accounting Officer and/or Corporate Controller(s).

20.    "Merger Agreement" refers to the documents in which Mindbody agrees to the merger in which it was acquired by Vista as part of the Privatization.

21.    "Mindbody" refers to Mindbody, Inc. and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees, agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

22.    "Qatalyst" refers to Qatalyst Partners LP and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees, agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

23.    "Vista" refers to Vista Equity Partners and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers,

directors, Employees, agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

24.    "You," "Your," or "Yours" means Mindbody, and all other persons acting or purporting to act on Mindbody's behalf, including, but not limited to the Individual Defendants and Your Employees, in-house and external attorneys, accountants, representatives, agents, or other persons purporting to act on behalf of Mindbody.

[continued onto the following page]

## DOCUMENTS REQUESTED

**Document Request No. 1:**

Any Documents produced by You in response to document requests, including any books and records requests, and production to regulators in any action, investigation or regulatory matter concerning the Privatization or the value of Mindbody, including Document produced in theactions before the Delaware Court of Chancery with the following Docket Numbers: 2019-0293-KSJM; 2019-0061-KSJM; 2019-0442-KSJM; and 2019-0070-JTL.

**Document Request No. 2:**

Any Documents concerning Communications involving any Board Members, Senior Management, Qatalyst, or Vista, concerning Mindbody's Financial Results, Forecasts, Financial Data, or the Privatization, and any documents referenced within such Documents.

**Document Request No. 3:**

Any Documents concerning Mindbody's Financial Results or Forecasts, including Documents concerning the preparation of or disclosure of Mindbody's Financial Results or Forecasts.

**Document Request No. 4:**

Documents supporting and sufficient documents to reasonably understand any Forecasts relied upon by Mindbody's management when formulating Mindbody's business plans or when determining what guidance to publicly disclose.

**Document Request No. 5:**

Any Documents summarizing, describing, or analyzing Mindbody's Financial Data, including "flash reports" and similar reports.

**Document Request No. 6:**

Any Documents concerning Mindbody's policies or procedures for the preparation of Financial Results or Forecasts.

**Document Request No. 7:**

Any Documents concerning the status of the integrations of Booker Software Inc. or FitMetrix, including any documents describing plans for those acquisitions, all financial projections and actuals for Booker Software Inc. or FitMetrix and indications of whether those plans were being accomplished.

**Document Request No. 8:**

Any Documents concerning the valuation of Mindbody from Mindbody's internal financial departments, Vista, or Qatalyst, including the method of valuation and metrics used to value the Company.

**Document Request No. 9:**

Any Documents concerning Defendants Stollmeyer and White's employment, compensation, career or career plans, whether involving Mindbody, Vista, others, or retirement.

**Document Request No. 10:**

Any Documents concerning Vista's plans for Mindbody after the Privatization, including information about the employment of Senior Management.

**Document Request No. 11:**

Any Documents concerning any Individual Defendants' employment or compensation, or about any Negotiations regarding such.

**Document Request No. 12:**

Any Documents concerning any Individual Defendants' shareholdings in Mindbody or contractual interest in Mindbody shares, such as options.

**Document Request No. 13:**

Any Documents concerning each Individual Defendant's assets, monthly expenses, gifts, loans, investments, pledges, and any other financial obligations.

**Document Request No. 14:**

Any Documents concerning securities trading plans entered into by the Individual Defendants and any communications concerning such plans.

**Document Request No. 15:**

Any Documents concerning the purchase, sale, or ownership of Mindbody securities by any of the Individual Defendants or any member of their immediate families, or any entity in which the Individual Defendants have or had any direct, indirect, or beneficial ownership interest.

**Document Request No. 16:**

Any Documents concerning Communications exchanged between any Individual Defendant and his financial advisor(s).

**Document Request No. 17:**

Any Documents concerning Defendant Liaw's compensation by Institutional Venture Partners.

**Document Request No. 18:**

Any Documents concerning any Communication from Defendant Liaw to any other employee or director at Institutional Venture Partners, regarding Mindbody.

**Document Request No. 19:**

Any Documents concerning Institutional Venture Partners and its potential, target, or planned exit date for its investment in Mindbody, whether such date is a specific time, or time period.

**Document Request No. 20:**

All Documents concerning personal relationships between Senior Management and Vista or Quatalyst, without regarding to the Relevant Time Period.

**Document Request No. 21:**

Any Documents, including personnel files, logs, diaries, notebooks, notes, date books, calendars, appointment books, address books, travel records, reimbursements, or telephone records concerning any Individual Defendant's attendance of Vista's CXO Summit on October 8-9, 2018, and any Documents describing or concerning any Individual Defendant's attendance at that conference.

**Document Request No. 22:**

Any Documents, including personnel files, logs, diaries, notebooks, notes, date books, calendars, appointment books, address books, travel records, reimbursements, or telephone records concerning any Individual Defendant's meetings with any member or Senior Management of a Vista-owned company and any Documents describing or concerning any Individual Defendant's attendance at that meeting.

**Document Request No. 23:**

Any Documents concerning anything of value given to or offered to Senior Management by Vista, Qatalyst, or any Individual Defendant, including any Documents concerning invitations or tickets to any event and any Documents concerning the recipients' attendance.

**Document Request No. 24:**

Any Documents concerning any Communications involving Senior Management about Mindbody's stock price.

**Document Request No. 25:**

Any Documents concerning any Communications, evaluation, or analysis of any changes

in Mindbody's share price on the following dates: (i) November 6, 2018; (ii) December 21, 2018; (iii) December 24, 2018; and (iv) January 5, 2019.

**<u>Document Request No. 26:</u>**

Any Documents concerning any stock market analyst reports covering Mindbody and any Documents concerning analyst reports covering Mindbody.

**<u>Document Request No. 27:</u>**

Any Documents concerning investor, analyst, or market reaction to Mindbody's stock prices or public disclosures.

**<u>Document Request No. 28:</u>**

Any Documents concerning meetings between Mindbody and any stock market analysts, stock brokers, reporters for any news media, or other securities industry representatives, concerning Mindbody's Financial Results, Forecasts, or the Privatization.

**<u>Document Request No. 29:</u>**

Any Documents concerning Communications Involving any Mindbody shareholder, proxy advisor, analyst, or regulator regarding the Privatization.

**<u>Document Request No. 30:</u>**

Any Documents regarding any form of shareholder voting, including but not limited to shareholder proxy statements and other information distributed to shareholders on behalf of Mindbody.

**<u>Document Request No. 31:</u>**

Any Documents, including notes, draft speeches, reports, and drafts of published reports, regarding the 3Q18 earnings call.

**<u>Document Request No. 32:</u>**

Any Documents concerning Vista's offer letter(s) to purchase Mindbody, and any related

transcript, meeting minutes, emails, correspondence concerning the transaction.

**Document Request No. 33:**

Any Documents concerning any potential sale of Mindbody or other major transaction or restructuring.

**Document Request No. 34:**

Any Documents concerning the premium offered by the Privatization.

**Document Request No. 35:**

Any Documents concerning the financing of the Privatization.

**Document Request No. 36:**

Any Documents concerning data room access to Vista and other potential acquirers.

**Document Request No. 37:**

Documents concerning the Go-Shop provision of Mindbody's Merger Agreement with Vista and any Documents concerning the Go-Shop period or Go-Shop Process.

**Document Request No. 38:**

Documents concerning Defendants Stollmeyer and White's schedule, calendar, travel, meetings, and calls during the period after the announcement of the proposed Privatization.

**Document Request No. 39:**

Any Documents concerning any Communication involving Senior Management concerning the disclosure, whether public or privately, of information regarding Mindbody's Financial Results or Financial Data at any points after Mindbody held its 3Q18 earnings call.

**Document Request No. 40:**

Any Documents provided to Mindbody's Board of Director, and Board member, or any committee of the Board, concerning Mindbody's Financial Results, Forecasts, Financial Data, or the Privatization, including but not limited to meeting minutes, agendas, Board packages, press releases, slide decks, and memoranda, as well as Communications by and between members of the Board of Directors and Senior Management.

**Document Request No. 41:**

Any Documents concerning the events of any Board meeting or meeting or any Committee of the Board.

**Document Request No. 42:**

Any Documents involving Your Audit Committee, internal auditors, and outside independent auditors regarding the Company's Financial Results, Forecasts, or the Privatization.

**Document Request No. 43:**

Any Documents concerning actual or potential Earnings Calls, Press Releases, Presentations, and SEC filings wherein the Privatization or Mindbody's Financial Results was or would have been discussed.

**Document Request No. 44:**

Any Documents You sent to or received from Qatalyst, Vista, or any other potential acquirer of Mindbody.

**Document Request No. 45:**

Any Documents concerning Communications between Mindbody's Senior Management and Qatalyst.

**Document Request No. 46:**

Any Documents concerning any complaints or notices filed with Your ethics department, or any other Document concerning potential ethical issues, unlawful conduct, or accounting irregularities.

**Document Request No. 47:**

Any Documents concerning any advice You or Senior Management solicited or received from any non-attorney advisor  (including financial advisors, auditors, or accountants) regarding the preparation of or disclosure of Mindbody's Financial Results, Forecasts, or the Privatization.

**Document Request No. 48:**

Any Documents concerning any advice You or Senior Management solicited or received from any legal advisor regarding the preparation of or disclosure of Mindbody's Financial Results, Forecasts, or the Privatization.[1]

**Document Request No. 49:**

Mindbody's document retention policies from 2017 to the present, including, without limitation, policies that relate to ESI and any preservation notices that were sent to employees of the Company regarding any litigation or potential litigation concerning the Privatization, including this case.

**Document Request No. 50:**

Any Documents and Communications concerning the search for, or the preservation, collection, maintenance, or production of any Documents and ESI with respect to this Action, including any litigation hold or preservation notices issued to or by Mindbody.

---

[1] We understand this request is likely to solicit privileged information and make this request in light of the possibility that Defendants intend to waive any such privilege, *e.g.*, for the purpose of asserting any sort of "advice of counsel" defense.

**Document Request No. 51:**

Any Documents and Communications concerning any insurance policies, indemnification agreements, hold harmless agreements, resolutions or by-laws (including the policies, agreements, resolutions and by-laws themselves) under which You may claim coverage to satisfy part or all of any possible liabilities as a result of any of the claims asserted in this Action.

**Document Request No. 52:**

Any Documents concerning this litigation that You received from or sent to any third-party, including, but not limited to, Documents produced in connection with any subpoenas served on non-parties to the Action.

**Document Request No. 53:**

Any Documents upon which You intend to rely or contemplate relying on to oppose class certification or to contest any element of class certification, including the elements of numerosity, commonality, adequacy, typicality, and superiority.

**Document Request No. 54:**

Any Documents supporting or concerning any affirmative defense(s) You have asserted or intend to assert in this case.

**Document Request No. 55:**

Any Documents upon which You intend to rely or contemplate relying on for any of Your defenses to the claims asserted in this Action.

**Document Request No. 56:**

Any Documents relied upon or used by You in responding to any interrogatory to be served by Lead Plaintiff.

**Document Request No. 57:**

Directories, organizational charts, and graphic documents sufficient to show Mindbody's organization, corporate structure (including operating units, subsidiaries and divisions, subdivisions and the relationships between and among them) and management responsibilities, and any changes thereto.

**Document Request No. 58:**

Any Documents concerning any agendas, scripts, notes, presentations, and drafts of any language purportedly fitting within the safe harbor for forward-looking statements under the Private Securities Litigation Reform Act.

Dated: November 10, 2020

                      **LABATON SUCHAROW LLP**

                      By: */s/ Carol C. Villegas*
                      Carol C. Villegas
                      David J. Schwartz
                      Charles Farrell
                      Jake Bissell-Linsk
                      140 Broadway
                      New York, New York 10005
                      Telephone: 212-907-0700
                      Facsimile: 212-818-0477
                      Email:  cvillegas@labaton.com

                      ***Counsel for Lead Plaintiffs Walleye Trading LLC, Walleye Opportunities Master Fund Ltd., and the Proposed Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2020, copies of the foregoing Lead Plaintiffs' First Set of Requests for Production of Documents Directed to All Defendants were served by electronic mail upon counsel as follows:

/s/ *Jake Bissell-Linsk*
Jake Bissell-Linsk