**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MINDBODY, INC. SECURITIES LITIGATION | Case No. 1:19-cv-08331-VEC<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION
SEEKING LEAVE TO AMEND THE AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION & STATEMENT OF FACTS ............................................................. 1

II.     THE MOTION TO AMEND IS PROCEDURALLY APPROPRIATE ........................... 3

III.    THE PSAC'S CLAIMS ARE NOT RENDERED FUTILE BY THE PSLRA ................. 4

        A.    Defendants' View is in Tension With the Order ...................................................... 4

        B.    The Safe Harbor Does Not Apply to Misstatements of Present Fact ..................... 5

        C.    The Safe Harbor Does Not Protect Material Omissions ......................................... 6

        D.    Even if the Safe Harbor Was Implicated, It Offers No Protection ......................... 7

        E.    The Safe Harbor Does Not Apply to Going Private Transactions ......................... 9

IV.     THE PSAC STRONGLY ALLEGES SCIENTER ............................................................ 10

V.      CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004)......................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).....................................................................................................10

*City of Providence v. Aeropostale, Inc.*,
  No. 11-CV-7132 (CM), 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ...................................6

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. In*c.,
  477 F. Supp. 3d 123 (S.D.N.Y. 2020).....................................................................................7

*Crostley v. Lamar Cnty., Tex.*,
  717 F.3d 410 (5th Cir. 2013) ..................................................................................................4

*Fezzani v. Bear, Stearns & Co.*,
  No. 99-CV-0793 (RCC), 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005) .....................................3

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018)......................................................................................5

*Giunta v. Dingman*,
  893 F.3d 73 (2d Cir. 2018)......................................................................................................7

*Gross v. GFI Grp., Inc.*,
  310 F. Supp. 3d 384 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 27 (2d Cir. 2019)..........................9

*In re ITT Educ. Servs., Sec. Litig.*,
  34 F. Supp. 3d 298 (S.D.N.Y. 2014)........................................................................................9

*Kreager v. Gen. Elec. Co.*,
  497 F.2d 468 (2d Cir. 1974).....................................................................................................3

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014).....................................................................................................6

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)....................................................................................................10

*In re Oxford Health Plans Sec. Litig.*,
  187 F.R.D. 133 (S.D.N.Y. 1999) .............................................................................................6

*Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
   335 F.R.D. 54 (M.D. Pa. 2020)......................................................................................4

*In re Retek Inc. Sec. Litig.*,
   No. 02-4209 (JRT/SRN), 2007 WL 14352 (D. Minn. Jan. 3, 2007) ...........................4

*In re Salix Pharms., Ltd.*,
   No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)................................6

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf,
   LLP*,
   No. 15-CV-2741 (JSR), 2015 WL 6437493 (S.D.N.Y. Oct. 21, 2015)................................ 3-4

*Slayton v. Am. Exp. Co.*,
   604 F.3d 758 (2d Cir. 2010)....................................................................................7, 9

*In re Symbol Techs., Inc. Sec. Litig.*,
   No. 05-CV-3923 (DRH), 2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013)...................................9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007).....................................................................................................10

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)..........................................................................................5

*Wilson v. LSB Indus., Inc.*,
   No. 15-CV-7614 (RA), 2017 WL 7052046 (S.D.N.Y. Mar. 2, 2017)......................................6

**Statutes & Rules**

Fed. R. Civ. P. 54(b) ...........................................................................................................3

Fed. R. Civ. P. 60................................................................................................................4

**Other Authorities**

Baruch Lev, *How to Win Investors Over*,
   Harv. Bus. Case Rev. (Nov. 2011).................................................................................8

John R. Graham et al., *The Econ Implications of Corp. Fin. Rep.*,
   40 J. Acct. & Econ. 3, 29 (2005) ...................................................................................8

Leigh Salvo, *Internal Forecasts, Guidance and Consensus Considerations*,
   Gilmartin Group (May 17, 2019).....................................................................................8

William Ciconte, III, et al., *Does the Midpoint Range Earnings Forecasts
   Represent Managers' Expectations?*, 19 Rev. Account. Stud. 628 (2013) ....................8

Wright, 15A Fed. Prac. & Proc. Juris. § 3914.1 (2d ed.)......................................................3

Co-Lead Plaintiffs Walleye Trading LLC and Walleye Opportunities Master Fund Ltd. ("Plaintiffs") submit this reply in further support of their letter motion (ECF No. 82, the "Motion") for leave to file the Proposed Second Amended Complaint ("PSAC," cited "¶__").[1]

## I.   INTRODUCTION & STATEMENT OF FACTS

Caught red handed, Defendants seek refuge in flawed procedural arguments, unsupported excuses, and a non-existent license to defraud. They attach voluminous documents in a misguided effort to treat this as a summary judgment motion, but they cannot run from the facts.

Before, during, and after cutting the 4Q18 guidance, Defendants knew that the real internal forecasts were above even the top of the guidance range. ¶24. Yet, over a month into the quarter (¶123), after being told by Mindbody's Financial Planning and Analysis Manager that they were "on track" to hit those forecasts (¶139), and *after* forming a committee to negotiate the Merger (¶¶119-22), Defendants crashed Mindbody's stock by issuing false guidance (¶¶129-31).

Defendant Stollmeyer, Mindbody's founder-CEO, did this to queue up an easy path to a quick deal with Vista, whom he stated he was "in love with." ¶¶184-85. By depressing the stock price Stollmeyer made Vista's bid appear to have a large premium and discouraged other bidders. ¶¶274-88, 323. From the start of the Merger process, Stollmeyer was putting his own interests first, making it clear that he would quash any deal that did not serve his interests (¶117), swearing colleagues to secrecy so he could steer the process (¶118), driving Mindbody to hire an investment banker who was simultaneously working for Vista (¶¶107(c), 117, 166-67), and blocking outreach to other viable bidders, based on his own preferences (¶¶168, 175).

The lowball deal was no loss to Stollmeyer, who cashed out his shares only to promptly receive new equity in the post-Merger company — eating his cake and having it too. ¶¶277-79.

---

[1] Defendants' brief in opposition to the Motion (ECF No. 86) is referred to as the "Opposition" and cited as "Opp." Terms are defined as in the PSAC unless defined herein and all emphasis is added unless otherwise stated.

Stollmeyer understood that Vista would offer him "compelling incentives" post-Merger. ¶184; ¶¶109-10, 113.  And this deal helped him resolve pending liquidity problems, which had caused him to tap a line of credit, and which he admitted was a source of frustration, given that "his capital [was] locked inside the business."  In his own words, the Merger allowed him to finally make the "wonderful transition from 'wealthy on paper' to actually wealthy."  ¶¶283-86. And as expected, he was rewarded handsomely by Vista.  ¶286. (Stollmeyer writing post-Merger that he "could make as much money over the next three years, as he did in the first go around.").

Unsurprisingly, the 4Q18 results were a "massive beat" to the false guidance.  ¶¶214-15. Defendants knew this before even the preliminary proxy was issued.  *Id.*  Defendant White knew that disclosing the results was the "right thin[g] to do."  ¶218(a).  And clearly so did Stollmeyer, who callously texted White: "should we plan on a last Earnings Call?   My script: 'here's our big beat.  ***Adios mutha fuckahs***" (¶216).  But Stollmeyer was too excited by his payout and the prospect of being "freed from the shackles of [the] public market" to release the results.  ¶275. Defendant Liaw emailed White that releasing the results could "bolster" the position of investors opposed to the deal.  ¶218(b).  In an echo of their prior fraud, White suggested they "give prelim 2019 revenue guidance based on the 2019 forecast . . . ***haircutting it for a beat and raise*** . . . [because] that would definitely ***move votes*** to 'yes.'"  ¶218(g).  Instead, they did not release the results, except to Vista, and continued touting the misleading Merger premium.  ¶¶219-226.

Against these stark allegations Defendants advance one flawed procedural argument (*see* Section I) and two unsuccessful arguments claiming that the PSAC is futile (*see* Sections II-III).[2]

---

[2] Defendants complain that the PSAC does not make even greater use of discovery, vaguely insinuating that Plaintiffs have not cited certain depositions to keep testimony out of the record.  (Opp. at 1, n.1-2).  This bizarre critique only serves to highlight that the allegations are so well evidenced and particularized that Defendants convinced themselves that this is a summary judgment motion.  It is not.  Plaintiffs have sought to balance the requirements of pleading a concise complaint with the applicable high pleading standards.  Fact discovery and expert discovery are far from complete, and none of the Individual Defendants have been deposed in this action.

## II.     THE MOTION TO AMEND IS PROCEDURALLY APPROPRIATE

Defendants' lone procedural argument is that the Court's September 25, 2020, motion to dismiss order (ECF No. 52, the "Order") held that Plaintiffs had not met their pleading burden with respect to the false guidance, and therefore amendment is barred.[3]  Opp. at 14.  Their argument is erroneous because it misconstrues the relevant principles of finality.

The Order did not announce whether it was with or without prejudice, and Defendants focus on the general rule that the dismissal of an action is deemed to be "with prejudice" unless otherwise stated.  Opp. at 12-13.  However, the "basic rules of finality as to rulings on the pleadings are simple enough.  Ordinarily orders that do not terminate the action by entry of judgment for plaintiff or defendant are not final. Orders that entail entry of judgment covering the entire action are final."  Wright, 15A Fed. Prac. & Proc. Juris. § 3914.1 (2d ed.); *cf.* Fed. R. Civ. P. 54(b) (unless the court directs entry of a final judgment any order "that adjudicates fewer than all the claims . . . does not end the action as to any of the claims").

Defendants never state the legal principle they believe bars amendment, but it appears they are invoking *res judicata*.  But that doctrine cannot apply unless there is a "***final*** judgment on the merits."  *Kreager v. Gen. Elec. Co.,* 497 F.2d 468, 472 (2d Cir. 1974) (citation omitted).  Here, no final judgment has been entered and no appeal could yet be taken, meaning that the claims that the Order found to not be adequately pled are not subject to any form of preclusion.[4]

Many cases establish that amendment is procedurally proper.  *E.g., Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP,* 2015 WL 6437493, at *3

---

[3] This is Defendants' only procedural argument.  They tacitly concede that other procedural factors often assessed on a motion to amend (*e.g.*, bad faith, undue delay, undue prejudice, or "good cause"), are not at issue here, and so those issues are not further addressed.  *See* Mot. at 4-5 (arguing such factors do not weigh against the Motion).

[4] To the extent that Defendants seek to rely on the law of the case doctrine, it would also be of no avail.  *Fezzani v. Bear, Stearns & Co.*, 2005 WL 500377, at *2 (S.D.N.Y. Mar. 2, 2005) ("[A]mendments would not be barred by the law-of-the-case doctrine because that doctrine applies merely to the resolution of legal issues; the proposed amendments, however, rely on new factual allegations, the sufficiency of which have not been ruled upon.").

3

(S.D.N.Y. Oct. 21, 2015) (court partially dismissed without specifying with or without prejudice, plaintiff granted leave to amend to revive dismissed claims after discovery); *In re Retek Inc. Sec. Litig.*, 2007 WL 14352, at *3 (D. Minn. Jan. 3, 2007) (securities fraud claims partially dismissed without specifying with or without prejudice, plaintiff granted leave to amend to revive the claims based on evidence obtained in discovery); *Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 58 (M.D. Pa. 2020) (same); *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 424 (5th Cir. 2013) (reversing denial of leave to amend to renew claims with new evidence, when those claims were expressly dismissed with prejudice in partial grant of motion to dismiss).[5]

Finally, during a hearing with the Court, Plaintiffs' counsel noted discovery could justify expanding the Class Period.  ECF No. 62 at 3:16-4:2.  Despite making many arguments about why discovery should be bifurcated, Defendants did not argue amendment would be improper.

## III.    THE PSAC'S CLAIMS ARE NOT RENDERED FUTILE BY THE PSLRA

The Opposition casts no doubt on the allegations that Defendants knew the forecasts exceeded the ***top*** of the guidance range (¶24), that guidance states "the Company's perspective on what is likely to happen," or that the forecasts were Mindbody's "best view" of expected performance (¶155-56).  Rather, they argue their deception is permitted by the PSLRA's safe harbor.  Opp. at 13-24.  This theory is at odds with the purpose of the safe harbor, which bars collateral attack on predictions that do not come true, but does not permit intentional falsities.

### A.    Defendants' View is in Tension With the Order

The Order held that Plaintiffs "failed to plead facts to support a strong inference that Defendants actually expected revenue would be higher" than guided (Order at 17), which suggests the allegations could have stated a viable claim if that showing had been made.

---

[5] A party may ask for a ***final*** judgment to be set aside upon new evidence.  Fed. R. Civ. P. 60.  It would invert the idea of finality if, as Defendants' view implies, Plaintiffs are in a worse position than if there were a final judgment.

The PSAC cures the allegations the Court found deficient.  For example, the Court held that the January email indicating results had come in ahead of forecasts lacked context about those forecasts, such as when they were made.  Order at 18.  The PSAC now shows Defendants knew the Company's forecasts were higher than the **top** of the guidance range before, during, and after announcing the false guidance.  ¶24.  Similarly, the Court analyzed a text message sent before the guidance was cut from a then-unnamed FP&A analyst, saying the Company was on track to hit its guidance and commenting that he did not see any basis for material changes to the prior assumptions.  Order at 19.  But the Order found the allegations insufficient because the analyst was unnamed, did "not appear to occupy a senior role," and the Order concluded that management likely had information he lacked.  *Id.*  The PSAC clarifies that the text message was sent by Craig Heinle (Mindbody's Financial Planning and Analysis Manager) to Kyle Gearhart (Mindbody's senior finance manager), and that it was forwarded to Defendant White.  ¶¶139-40.

**B.     The Safe Harbor Does Not Apply to Misstatements of Present Fact**

According to Stollmeyer and director Goodman, respectively, guidance "communicat[es] our expectations" and informs the public of "the Company's perspective on what is likely to happen."  ¶155-56.  Here, defendants misled as a matter of present fact because the guidance did not actually state their expectations.  This claim does not run afoul of the safe harbor, because it has nothing to do with whether Defendants' views came true or were too gloomy, but alleges that they misrepresented their actual current expectations.  Where a plaintiff challenges a non-forward-looking aspect of a statement, that allegation is not subject to the safe harbor.  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016); *e.g.*, *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 304 (S.D.N.Y. 2018) ("Plaintiff correctly points out [the] statements are not protected by the safe harbor provision because they were statements of present fact.  For example [defendant] stated: "We remain comfortable with our previously stated EPS guidance").

### C.      The Safe Harbor Does Not Protect Material Omissions

Even accepting Defendants' skewed view – *i.e.*, that it is appropriate to discount the forecast when issuing guidance, so as to set up the Company for a "beat and raise" – does them no favors.  Opp. 17-19.  This view just positions the forecasts as undisclosed information upon which the guidance was based, that undermined the reliability of that guidance, and which Defendants **omitted** to disclose.  *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (upon speaking, "there is a duty to tell the whole truth").  Omissions are not insulated by the safe harbor.  *Wilson v. LSB Indus., Inc.*, 2017 WL 7052046, at *3 (S.D.N.Y. Mar. 2, 2017).

*City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013), is instructive.  There, defendants issued projections that conflicted with undisclosed expectations for a key product line.  *Id.* at 14-15.   The court held that plaintiff "does not need to rely on the falsity of [the] financial projections in order to show that [defendants] fail to disclose facts that impacted the reliability of those statements."   *Id.* at 13; *see also In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *10 (S.D.N.Y. Apr. 22, 2016) (failure to disclose present information about the business that undermined the reliability of forward looking statements was actionable); *In re Oxford Health Plans Sec. Litig.*, 187 F.R.D. 133, 141 n.9 (S.D.N.Y. 1999) (same).

Defendants try to distinguish *Aeropostale* by noting it involved omissions of present information about the company's business.  Opp. at 25.  So too here.  Defendants' public statement was the guidance, and the forecast was the information that ought to have supported that statement, but in reality did not.  The omission of this information "impacted the reliability" of the stated guidance.  *Aeropostale,* at *13.  This situation only differs from *Aeropostale* in that it is more egregious; in *Aeropostale* the undisclosed information was merely one of many inputs backing the public statement—here, the forecast was the key input backing the guidance.

### D.     Even if the Safe Harbor Was Implicated, It Offers No Protection

The safe harbor does not absolve liability where, as here, the false guidance was (a) material, (b) made with knowledge that it is false or misleading, and (c) not accompanied by meaningful cautionary language.  *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

**(a) <u>The false guidance was material.</u>**  Investors rely on guidance, the cut caused a 20% drop in Mindbody's stock, and Stollmeyer said it was a "*substantial* guide down."  ¶¶142-144.

**(b) <u>The guidance was known to be misleading when made.</u>**  Defendants argue it was not misleading to issue a guidance range that was ***entirely below*** their forecasts.  Opp. at 16-19. This argument is quickly resolved by the well pled facts provided by actual testimony of Stollmeyer and Goodman that (a) the forecasts were the Company's "best view" of expected performance and (b) guidance communicates the Company's expectations.  ¶155-56.

Defendants do not advance a cogent argument that their statements were anything but misleading.  Opp. at 16-19.  Instead, they present a factual defense of why misleading investors may not have been malicious.  Whether their deception was malicious relates to motive, not to whether the guidance was misleading.[6]  Their excuse also does more to prove their guilt than exculpate.  Their excuse is that management likes to beat guidance, so they discount their real expectations to set up a beat.  ***This is so brazen that it requires a double take***: their excuse is that it is their practice to lie to investors about their expectations!  Their cry that "everyone else was doing it" is no defense and, if true, would only reinforce the importance of finding liability here.

Even the "everyone else is doing it" excuse lacks support and depends on expanding the motion to dismiss inquiry with unpled factual assertions.  *See Giunta v. Dingman*, 893 F.3d 73, 78-79 (2d Cir. 2018) (a motion to dismiss reviews and accepts plaintiff's allegations).  In lieu of

---

[6] Construing their argument as an attempt to challenge the meaning of guidance also fails at the pleading stage.  *See City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. In*c., 477 F. Supp. 3d 123, 130 (S.D.N.Y. 2020).

expert testimony, defendants rely on secondary sources and even these offer them little support: **(1)** Baruch Lev notes that "guidance tends to skew negative," ***but*** that quote refers to whether guidance is typically above or below analysts' pre-guidance expectations, not that guidance understates internal forecasts; **(2)** Leigh Salvo states that management should "be realistic, not optimistic," but this quote lends Defendants no support and the cited blog post also says managers should not "***state expectations for revenue that are lower than what [they] believe***;" **(3)** John R. Graham explains that the market reacts negatively to guidance misses, but this article details how managers avoid misses with operational and accounting strategies (*e.g.*, to try to build smooth predictable earnings), not by lying about their expectations; **(4)** Defendants cite Graham again for the banal fact that performance targets for compensation may differ from guidance [or forecasts], (a point Stollmeyer also makes at Opp. 18); and **(5)** William Ciconte's empirical study compares guidance with results, assumes forecasts are perfect, and then works backwards to hypothesize that the ***midpoint*** of guidance may often be less than forecasts.[7]

Defendants cite an analyst report – completely unrelated to the 4Q18 guidance – noting this one analyst's attempt to predict 2019 guidance based on figures published in the proxy, but this has little relevance to what actually happened when MB issued the 4Q18 guidance at the same time they were secretly planning the go-private merger.[8]  Opp. at 17-18.  The stronger evidence is that after the 4Q18 guidance, analyst consensus moved to the middle of the new guidance range.  ¶131.  The job of these analysts was to give their clients honest information – if they thought the guidance just set up a beat, their analysis would not have adopted it.

---

[7]  Opp. 16-17 citing: (1) Baruch Lev, *How to Win Investors Over*, Harv. Bus. Case Rev. (Nov. 2011); (2) Leigh Salvo, *Internal Forecasts, Guidance and Consensus Considerations*, Gilmartin Group (May 17, 2019); (3)-(4) John R. Graham et al., *The Econ Implications of Corp. Fin. Rep.*, 40 J. Acct. & Econ. 3, 29 (2005); (5) William Ciconte, III, et al., *Does the Midpoint Range Earnings Forecasts Represent Managers' Expectations?*, 19 Rev. Account. Stud. 628 (2013), http://bear.warrington.ufl.edu/tucker/2013-2_management_range_forecasts.pdf.

[8]  It would be inappropriate to draw conclusions from this report at this stage, where it cannot be contextualized. Preliminary discovery shows the analyst was in communication with Mindbody, and thus may have unique views.

Defendants also cite depositions of director Goodman and Stollmeyer for the self-serving commentary that guidance should provide some buffer.  Opp. at 18-19.  The desire to express a degree of uncertainty is precisely why guidance is often given in a range.  There is no justification for the entire guidance range being set below *actual* expectations, besides deceit.

Finally, their attempted excuse falls apart given the facts at issue here.  Before issuing the 4Q18 guidance, Stollmeyer had already received Vista's direct expression of interest, the Board had met to discuss the Merger, and the Committee was formed.  ¶115, 119, 122.  This context required candor and undermines the notion they were setting up a future revenue "beat."

**(c) <u>The guidance was not accompanied by meaningful cautionary language.</u>**

Defendants "carry the burden of demonstrating that they are protected by the meaningful cautionary language prong of the safe harbor." *Slayton*, 604 F.3d at 773.  "[N]o degree of cautionary language will protect material misrepresentations or omissions where defendants knew their statements were false when made." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 223 (S.D.N.Y. 2004) (citation omitted).[9]  Defendants contend that they are in the clear because they disclosed some uncertainties about the business and generic risks.  Opp. at 14-15.  This did not disclose the risk that they might issue lower than forecasted guidance to manipulate investors.  Assessing cautionary language, "requires an inquiry into what the defendants knew" to determine the "risks they [were] aware [of]." *Slayton*, 604 F.3d at 771.

**E.      The Safe Harbor Does Not Apply to Going Private Transactions**

The safe harbor does not apply to statements "in connection with" privatizations, (¶336 (*quoting* 15 U.S.C. § 78u-5(b)(1)(E)), because protecting predictions is less important than

---

[9] *Gross v. GFI Grp., Inc.*, 310 F. Supp. 3d 384, 393 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 27 (2d Cir. 2019) (safe harbor is no shield if "statement was knowingly false when made"); *In re ITT Educ. Servs., Sec. Litig.*, 34 F. Supp. 3d 298, 305 (S.D.N.Y. 2014) ("cautionary language is meaningful only when it discloses the known risks"); *In re Symbol Techs., Inc. Sec. Litig.*, 2013 WL 6330665, at *15 (E.D.N.Y. Dec. 5, 2013) (similar).

candor where the issuer may be privatizing, before predictions settle.  The PSAC's lead theory is that the guidance was connected to privatizing.  ¶19.  Defendants just ignore this argument.

## IV.	THE PSAC STRONGLY ALLEGES SCIENTER

Defendants state that "[t]o establish scienter, Lead Plaintiffs ***must*** allege" motive and opportunity.  Opp. at 19 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  As the Court knows, this is untrue, as that very sentence of *ATSI* states scienter can ***also*** be pled "by alleging facts . . . constituting strong circumstantial evidence of conscious misbehavior or recklessness."  493 F.3d at 99; Order at 15 (quoting the same); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 325 (2007) ("absence of a motive . . . is not fatal.").

Plaintiffs allege conscious misbehavior or recklessness by showing Defendants' "knowledge of facts or access to information."  *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).  The PSAC alleges that Stollmeyer and White knew the true forecasts.  ¶¶308-10; *e.g.*, ¶¶24, 136-47.  Defendants simply ignore that this adequately pleads scienter.  Opp. 19-24.

While not required, the PSAC also alleges motive and opportunity.  ¶¶273-306.  Two points warrant clarification.  **First**, Defendants dispute the extent of Stollmeyer's illiquidity (Opp. 7-9), but cannot deny that he faced illiquidity and admitted to being frustrated that his wealth was tied up in Mindbody.  **Second**, his motive to deflate the stock to secure a deal with Vista is compelling given: the timeline (¶¶114-22), his selfishness during the Merger (¶¶117, 168, 175), his "love" for Vista (¶184-85), his illiquidity (¶¶283-286), his disdain for investors (¶¶216, 275), his expectation of "compelling incentives" (¶184, 109-10, 113), and that the deal let him cash out ***and*** get new equity, nullifying any loss from a bad deal (¶¶277-79).  White's suggestion of "haircutting" guidance to "move votes to 'yes,'" bolsters this inference.  (¶218(f)).

## V.	CONCLUSION

For the reasons stated herein, the Motion should be granted.

DATED:  March 19, 2021

LABATON SUCHAROW LLP

By:  */s/ Carol C. Villegas*

Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
dschwartz@labaton.com
jbissell-linsk@labaton.com

***Lead Counsel for Lead Plaintiffs Walleye
Trading LLC and Walleye Opportunities Master
Fund Ltd., and Lead Counsel for the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by email to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Carol C. Villegas*
Carol C. Villegas
