# EXHIBIT 16

IN THE COURT OF CHANCERY

OF THE STATE OF DELAWARE

_____

IN RE MINDBODY, INC. STOCKHOLDER

LITIGATION

C.A. No. 2019-0442-KSJM

_____

December 18, 2020

9:40 a.m.

*** HIGHLY CONFIDENTIAL ***

VIDEOCONFERENCE DEPOSITION of

GAIL GOODMAN, pursuant to Notice, held at

██████  ████████  ██████  ██████████████  ██████

████████████  before Wayne Hock, a Notary

Public of the State of New York.

A P P E A R A N C E S:

FRIEDLANDER & GORRIS, P.A.
Attorneys for Plaintiffs
          1201 North Market Street
          Wilmington, Delaware 19801
BY:       CHRISTOPHER FOULDS, ESQ.
          cfoulds@friedlandergorris.com
          (via videoconference)
          -and-
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
          500 Delaware Avenue
          Wilmington, Delaware 19801
BY:       CHRISTOPHER ORRICO, ESQ.
          christopher.orrico@blbglaw.com
          (via videoconference)
          ANDREW BLUMBERG, ESQ.
          andrew.blumberg@blbglaw.com
          (via videoconference)

LABATON SUCHAROW LLP
Attorneys for Class Plaintiffs
          140 Broadway
          New York, New York 10005

BY:       JAKE BISSELL-LINSK, ESQ.
          jbissell-linsk@labaton.com
          (via videoconference)
          CAROL VILLEGAS, ESQ.
          cvillegas@labaton.com
          (via videoconference)

A P P E A R A N C E S:

FRIEDLANDER & GORRIS, P.A.
Attorneys for Plaintiffs
          1201 North Market Street
          Wilmington, Delaware 19801
BY:       CHRISTOPHER FOULDS, ESQ.
          cfoulds@friedlandergorris.com
          (via videoconference)
          -and-
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
          500 Delaware Avenue
          Wilmington, Delaware 19801
BY:       CHRISTOPHER ORRICO, ESQ.
          christopher.orrico@blbglaw.com
          (via videoconference)
          ANDREW BLUMBERG, ESQ.
          andrew.blumberg@blbglaw.com
          (via videoconference)

LABATON SUCHAROW LLP
Attorneys for Class Plaintiffs
          140 Broadway
          New York, New York 10005

BY:       JAKE BISSELL-LINSK, ESQ.
          jbissell-linsk@labaton.com
          (via videoconference)
          CAROL VILLEGAS, ESQ.
          cvillegas@labaton.com
          (via videoconference)

Page 3

A P P E A R A N C E S: (Continued)


KIRKLAND & ELLIS LLP
Attorneys for MINDBODY
RICK STOLLMEYER
BRETT WHITE
          601 Lexington Avenue
          New York, New York 10022
BY:     JOHN P. DEL MONACO, ESQ.
          john.delmonaco@kirkland.com
          (via videoconference)
          COURTNEY CARVILL,  ESQ.
          courtney.carvill@kirkland.com
          (via videoconference)
          MATTHEW SOLUM, ESQ.
          matthew.solum@kirkland.com
          (via videoconference)

COOLEY LLP
Attorneys for Witness
          55 Hudson Yards
          New York, New York 10001
BY:     SARAH LIGHTDALE, ESQ.
          slightdale@cooley.com
          (via videoconference)
          ELIZABETH WRIGHT, ESQ.
          ewright@cooley.com
          (via videoconference)
          CODY MARDEN, ESQ.
          cmarden@cooley.com
          (via videoconference)

**Page 4**

A  P  P  E  A  R  A  N  C  E  S:  (Continued)


ALSO  PRESENT:


GAYLE ASHTON, Videographer
(via videoconference)
DOUGLAS JOHNSTON
(via videoconference)


*        *        *

Page 285

G. Goodman -- HIGHLY CONFIDENTIAL recommendation of both Brett White or Rick Stollmeyer?

A.    And where they thought the risks were and where the upside opportunities were?  That is additional information that they were given.

Q.    Was that additional information provided in any sort of report or written format or just conveyed by Stollmeyer and White?

A.    It was usually in a presentation.

Q.    What's the purpose of giving guidance?

A.    A debate frequently had at many board meetings, by the way.

So it is -- setting guidance expectations helps ensure that public shareholders have an accurate view to the company's perspective on what's likely to happen.  So otherwise, public shareholders are flying blind in many ways you risk them either under-forecasting or over-forecasting.  It is not required that

Page 286

G. Goodman -- HIGHLY CONFIDENTIAL

a company give guidance, but it is very common practice.

Q.    And did Mindbody customarily issue guidance in a range?

A.    Yes.

Q.    And what's the point of providing a range?

A.    To give you some room to flex that risk, that downside risk.

Q.    Are you familiar with the term "a beat and raise?"

A.    Yes.

Q.    And what is your understanding of that phrase?

A.    So a beat and raise is when one of your metrics -- let's just use revenue as an example -- comes in above the guidance range; that's beating the range. And raising is then increasing the expectation for the next quarter or year. This could happen on revenue, it can happen in earnings.  So beat the metric; raise for the next quarter or year.

Q.    And in what context is that

Page 287

G. Goodman -- HIGHLY CONFIDENTIAL

phrase used?

A.    Best practices.

Q.    Have you heard of someone planning for a beat and raise?

A.    Yes.

Q.    And what would that mean?

A.    That would mean setting your guidance range so that there is an opportunity to get ahead of it and then of course, once you're ahead of it, being able to raise for the next quarter.

Q.    Earlier you said a beat and raise to be a best practice.

Why is that?

A.    The shareholders love it.

Q.    And why do shareholders love it?

A.    Shareholders reward companies that do this with higher stock price.

Why do they love it?  Wow.  Good philosophical question.  I think this is one of these self-reinforcing cycles. When a company beats and raise, the stock prices go up, the shareholders are happy; therefore, they want them to beat and

G. Goodman -- HIGHLY CONFIDENTIAL
raise.

I think shareholders like it because the stock goes up.

Q.   And in saying that shareholders like it, are you distinguishing between shareholders like strong results that beat expectations or that shareholders like the practice of a beat and raise?

A.   I'm not sure there's a meaningful distinction between those two.

Q.   Understood.

Shifting gears just slightly, did Mindbody announce guidance for the fourth quarter of 2018?

A.   Yes.

Q.   And do you know when that information was released?

A.   That was the early November date, I think it was the seventh.  It was Q3 earnings.  We guided for -- yeah.

Actually, when you guide for Q3, you have an implied guide for Q4 because you have an annual guide.

Does that make sense?

G. Goodman -- HIGHLY CONFIDENTIAL

Q.    Yes.

A.    So we obviously guided sort of twice to Q4.  Like the Q2 earnings, when we guided to Q3, there's an implied guide and then there's an explicit guide at Q3.

Q.    And so you released updated guidance for the fourth quarter of 2018 when you released your third quarter 2018 results?

A.    Correct.

Q.    Do you recall what that updated guidance was set at?

A.    I want to say it was like sixty-six to sixty-seven, but it could have been sixty-six and a half.  It was in that order of magnitude.

Q.    Regardless of the specific numbers, was it an increase or a decrease from the previously implied guidance?

A.    It was a decrease.

Q.    Have you ever given information about Mindbody's internal expectations for the fourth quarter of 2018 before that guidance was released?

G. Goodman -- HIGHLY CONFIDENTIAL

MR. DEL MONACO: I object to the form.

THE WITNESS:  Their current forecast?

Q.    Internal expectations.

A.    Yes.

Q.    In what context were you given that information?

A.    Well, I'll also be specific that I don't recall it at the time, but I have seen documents in prep that reminded me that I saw them.

In the pre-earnings materials that Brett shared with the board.

Q.    And when were those materials shared?

A.    Again, I don't recall the specifics, but a few days before earnings.

Q.    Do you recall what those forecasts were?

A.    In preparation for this testimony, it was refreshed to me that we were right about sixty-eight million on the internal forecast.

Page 291

G. Goodman -- HIGHLY CONFIDENTIAL

Q.    All right.

Could you please open what was previously marked as Exhibit 8.  It will take me a moment as well.

A.    I have it open.

Q.    Is it correct that these are materials related to the October 26, 2018 board meeting?

A.    They are.

Q.    And if you'll scroll down to the fourth page, that's the cover page for a slide deck; correct?

A.    Correct.

Q.    Do you know what that slide deck was, or is?

A.    The very first pass at the 2019 plan and the strategic growth path to five hundred million in revenue.

Q.    Could you please scroll to page fourteen of the exhibit.

MS. LIGHTDALE: Jake, what's the Bates?

MR. BISSELL-LINSK: It's Bates number Mindbody 0002554.

G. Goodman -- HIGHLY CONFIDENTIAL

THE WITNESS:  I'm on it.

Q.    Great.

Do you see the columns at the top and the see the columns labeled Q4 2018?

A.    I do.

Q.    And then you see the row labeled total revenue, it's in grey?

A.    Correct.

Q.    What does that number mean?

A.    Sixty-seven million eight hundred fifty-eight thousand.

Q.    And what is that number a reference to?

A.    Total quarterly revenue.

Q.    Is that actual revenue?

A.    No, this is a forecasted revenue.  We're just at the beginning of the quarter.  It's October 26.  We're in the first month of the quarter.

Q.    And what does it mean to have forecasted revenue?

A.    It means that the internal finance team has used various inputs,

Page 293

G. Goodman -- HIGHLY CONFIDENTIAL inputs often from the sales team, inputs from their own modeling, and created their best view of where they think the quarter might come in.

Q. Do you recall whether Mindbody's internal fourth quarter 2018 internal forecasts were ever reduced from that number?

A. I don't recall.

Q. Did you ever discuss these forecasts with anyone?

A. Again, I don't recall.

Q. Okay.

Could you please open Exhibit 23 that was previously marked.

A. I'm in.

Q. Awesome.

Is it correct that these are minutes associated with the December 7, 2018 board meeting?

A. They are.

Q. And if you scroll down four pages, there is a slide -- the cover page to a slide deck; is that correct?