L99AAMINC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

                    IN RE:  MINDBODY INC. v. SECURITIES LITIGATION,

                                    19 CV 8331 (VEC)

------------------------------x

                                    New York, N.Y.
                                    September 9, 2021
                                    4:40 p.m.

Before:

                    HON. VALERIE E. CAPRONI,

                                    District Judge

                            APPEARANCES

LABATON SUCHAROW LLP
        Attorney for Plaintiffs
BY:  CAROL VILLEGAS
     JAKE BISSEL-LINSK
     DAVID SALDAMANDO

KIRKLAND & ELLIS LLP
        Attorneys for Defendants
BY:  MATTHEW SOLUM
     JOHN DEL MONACO
     HALEY STERN

COOLEY LLP
        Attorneys for Defendant
BY:  SARAH LIGHTDALE

(Case called)

MS. VILLEGAS:  Good afternoon, your Honor.

Carol Villegas, from Labaton Sucharow, on behalf of the plaintiff and the class.

THE COURT:  Good afternoon.

MR. BISSEL-LINSK:  I'm Jake Bissel-Linsk, on behalf of plaintiffs.

THE COURT:  Good afternoon.

MR. SALDAMANDO:  Good afternoon, your Honor.

David Saldamando, on behalf of --

THE COURT:  Good afternoon.

The front table should sit down.

MR. SOLUM:  Good afternoon, your Honor.

Matt Solum, for Kirkland Ellis, on behalf of defendants other than Eric Liaw.

THE COURT:  Defendants, except the individual.  Okay.

MS. LIGHTDALE:  Good afternoon, your Honor.

Sarah Lightdale, from Cooley, on behalf of defendant Eric Liaw.

And Mr. Solum does represent the two other individual defendants.

THE COURT:  Okay.  Got it.

MR. DEL MONACO:  Good afternoon, your Honor.

John Del Monaco, from Kirkland & Ellis.  I represent MindBody, Mr. Stollmeyer and Mr. White.

MS. STERN:  Good afternoon, your Honor.

Haley Stern, from Kirkland Ellis.

THE COURT:  I'm sorry.  I didn't hear anything after "Haley Stern".

MS. STERN:  Haley Stern, from Kirkland & Ellis.

THE COURT:  Thanks.  Please, sit down.

Okay.  I called you in.  I realized that one, it's going to be the first time any of you have been in a courtroom for 18 months.  So, welcome back.  But mostly because I don't think I've seen you at all.  I think this whole case has been done via telephone.  So, I thought it might be useful to actually lay eyes on you.

So, I've read the joint letter.  Both sides are suggesting that you are going to make a motion for summary judgment at some point, but it also appears that everybody agrees that the right way to stage this is to do class certifications and then summary judgment; correct?

MS. VILLEGAS:  Yes, your Honor.

MR. SOLUM:  Yes, your Honor.

THE COURT:  I see nods all the way around.  Good.

Okay.  So, you are scheduled, your proposed schedule does not account for the possibility that one side or the other is going to make a Daubert motion direct that an expert that you are relying on for purposes either of class certification or opposing class certification.

And I guess the question is, was that intentional or not?

MR. SOLUM:  Your Honor, this is Matt Solum.

THE COURT:  When you are in person you actually don't have to identify yourself.  The reporter's smart and she's got a seating chart.

MR. SOLUM:  Wonderful.

It wasn't intentional in the sense that we've been through class cert on other cases and securities cases.  And often Daubert motions, as this Court may know, get filed in those but it wasn't.  We have not made a steady judgment not to file one.  We just haven't seen their expert report yet.  So, we haven't made a decision.  We're happy to build a schedule because, again, as this Court may know, they often do get filed.

THE COURT:  Exactly.  So, what I would like to do is build that into your schedule.  So, for example, it's actually pretty easy to do when the defendant responds, for example, using your schedule.  So, on December the 2nd, when the defendant opposes class certification, at the same time the Daubert motion is due to exclude the plaintiff's expert.  So, what we'll do is we've got your schedule.  We will build those dates in in the order that we'll enter so that that will be laid out as we go so we'll know when all those are due.

MR. SOLUM:  Great.

L99AAMINC                    Conference

THE COURT:  I will then enter a schedule that will have all this in it.  It'll have a lot of intermediate dates just as you've laid out.  You can change any intermediate date on agreement between the parties without bothering me, except for the last one.

MR. SOLUM:  Got it.

THE COURT:  Okay.  So, as long as everything's done on the same date, I don't care.

MR. SOLUM:  Got it.  Understood.

THE COURT:  Terrific.  So, that's what we'll do.

MS. VILLEGAS:  Your Honor, I have a question.

THE COURT:  Yes.

MS. VILLEGAS:  So, we'll be able to submit an opposition to the Daubert on when our reply is due?

THE COURT:  Yeah.  There'll be a whole schedule that lays out when -- if they make a motion -- when your response is due, when your motion will be due to their expert, et cetera. So, I'll just build all those dates into what you've already proposed.  Okay?

MS. VILLEGAS:  Okay.  Thank you.

THE COURT:  Have the parties talked settlement?

MS. VILLEGAS:  We have, your Honor.  We're working on it.

THE COURT:  All right.  So, for what it's worth, in my humble opinion, without seeing a lot of evidence in this case,

you know what I've seen in this case.  I think the defendant

has a problem with the proxy statement.  I think the

plaintiff's argument on fourth quarter, you got passed.  I let

you amend the complaint, but I think your theory is out there.

And in terms of whether it's going to work as a motion, which

is a very long-winded way of saying, you both got risks.  That

is usually the perfect case to settle before you spend a whole

lot more money on briefing class certification.

Yes.

MR. SOLUM:  I was just going to amplify, I don't want

to disclose any settlement conversation, of course, but we were

close and then we got your ruling and I think the parties are

now far apart again.

THE COURT:  Uh-oh.  Oh, darn.

MR. SOLUM:  We had the same reaction.

MS. VILLEGAS:  We did not.

THE COURT:  Well, I mean, again, I let you amend the

complaint but it was barely -- and I let you amend it because I

felt like there were fact questions that could only be resolved

at summary judgment.  But that does not mean that you should

think that all of a sudden this case has become a lot more

valuable because I am not at all convinced that's not going to

work.

But again, I don't know any facts.  So, I say that for

what it's worth.  Again, I don't think I've ever seen y'all but

I am sure I said this when you were on the phone.  Your magistrate judge is Magistrate Judge Parker.  If you want the help of our magistrate judge, I can give you referral to her. I don't know if you were talking, if you have your own mediator or what.

MR. SOLUM:  We were working with a mediator.  She is very good, and nothing against Judge Parker.

THE COURT:  That's fine.  It makes more sense, if you've got your own, to use her or him.

Anything further from the plaintiff?

MS. VILLEGAS:  Respectfully, your Honor, I would just say that there are lots and lots of documents we didn't include in the amended complaint.  So, I hear exactly what you are saying and we will go back and we will discuss it.

THE COURT:  Okay.  Look, I am giving you my two cents for what it's worth from what I've seen.  I would just say -- and this was why I was concerned about it -- there are lots of reasons.  I get your theory on why you can't lowball your quarterly estimates so that you get a beep.  On the other hand, if I had been on the honor committee of that company I would have been very skeptical of the memos the CFO was giving me because they had not yet made a single estimate.  So, you know, again, I don't know what the documents show, but there would be reasons why rational management could say, we're not really sure that's going to happen.  And that could be enough that you

L99AAMINC                    Conference

are not going to get a quarter.  I don't know what any of this does to your damages but that was sort of my thought is that it's the sort of thing that strikes me as there's lots of explanations kind of beyond the one that the defendant gave in the briefing for why rational people could have said, we just don't think we're going to make that number.  I don't care what those CFOs said.  That's all.

So, again, this is just my two cents for what it's worth before you guys all spend a whole lot more money and create a whole lot more work for me.

Anything further from the defendant?

MR. SOLUM:  Nothing further, your Honor.

THE COURT:  How about from the other defendants?

MS. VILLEGAS:  Your Honor, on behalf of my client, I thank you for that observation, but I have nothing further.

THE COURT:  Yes.  Okay.  Anything further?

MR. DEL MONACO:  Nothing further, your Honor.

Thanks, everybody.  Thanks for coming to court.  It's a wonderful place.  Come more often.

(Adjourned)