# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MINDBODY, INC. SECURITIES LITIGATION | Civil Action No. 1:19-cv-08331-VEC |

**AFFIDAVIT/EXPERT REPORT**

**OF**

**BENJAMIN SACKS**

October 15, 2021



TABLE OF CONTENTS

I.      **Introduction** ...................................................................................................................1

II.     **Qualifications** ..................................................................................................................2

III.    **Summary of Opinions** ....................................................................................................2

IV.     **Overview of Company and Allegations** ........................................................................3

V.      **Opinions** ...........................................................................................................................4

      V.A.    There are four generally accepted valuation techniques that are commonly used in corporate valuation. ..................................................................................................4

      V.B.    The DCF method is an appropriate technique for determining the Fair Value of Mindbody .......................................................................................................................5

      V.C.    DCF is applied differently when valuing young, growing companies versus mature companies ...................................................................................................................5

      V.D.    The parameters and inputs to a properly calibrated DCF model require company-specific, internal data ....................................................................................................6

      V.E.    A valuation can change over a period of time, but such changes can be modeled within a consistent framework ..................................................................................7

      V.F.    These Fair Values are common to all class members and the methods used to derive them are common to all class members ....................................................................8

**Appendix A: Sacks Resume** ...................................................................................................9

**Appendix B: Material Relied Upon** .....................................................................................25

# I.    Introduction

1.  I, Benjamin Sacks, am a principal at The Brattle Group, a global economic consulting firm headquartered in Boston, Massachusetts with additional offices in Beijing, Brussels, Chicago, London, Madrid, New York, Rome, San Francisco, Sydney, Toronto, and Washington, D.C. Co-Lead Plaintiffs Walleye Trading LLC and Walleye Opportunities Master Fund Ltd (collectively, "Plaintiffs") allege Defendants Richard L. Stollmeyer, Brett White, Eric Liaw, and Mindbody, Inc ("Mindbody") (collectively, "Defendants") manipulated Mindbody's share price as part of a scheme to defraud investors and enable Vista Equity Partners to acquire Mindbody (the "Merger") at an artificially low price.

2.  I understand Plaintiffs allege that during the class period:

    a.  Mindbody management released negative information to the market that was in fact false;[1]

    b.  Mindbody management then entered into the Merger agreement;[2]

    c.  While the Merger was pending, Mindbody management withheld positive information from the market that was in fact true;[3]

    d.  Mindbody management released projections, and Fairness Opinions from financial advisors, for Mindbody in a proxy statement for the Merger.[4]

3.  Plaintiffs' counsel has asked me to provide my opinion on (a) what generally accepted valuation techniques may be employed to determine the fair value of Mindbody using a class-wide methodology, on each day during the class period, and (b) what data or inputs would be required in order to perform such calculations. I have not been asked to, and have not, provided an opinion on whether damages in this case should be determined based on the fair value of

---

[1]    *E.g.*, Second Amended Complaint in this Action, ECF No. 95 ("Complaint"), ¶¶123-63.

[2]    Complaint, ¶179.

[3]    Complaint, ¶¶208-230.

[4]    *E.g.*, Schedule 14A, January 9, 2019, at 42, A-21 at https://www.sec.gov/Archives/edgar/data/1458962—/000119312519005308/0001193125-19-005308-index.htm; Schedule 14A, January 23, 2019, at 42, https://www.sec.gov/Archives/edgar/data/1458962/000119312519014341/d681305ddefm14a.htm#toc681305_44

Mindbody's common stock, only whether fair value can be determined using generally accepted valuation techniques and on a class-wide basis, as stated above.

## II.    Qualifications

4.  As a financial economist, I routinely conduct financial analysis, including valuation analysis and assessment of damages. I received a B.A. in mathematical economics from Columbia University and an M.A. in economics from the University of Chicago. I have more than twenty years' experience providing expert advice and testimony on the application of economics, finance, and statistics to valuations, damages, and determination of liability. I have served as an expert in matters before the Delaware Court of Chancery, and before Tribunals constituted under bilateral and multilateral international treaties (International Arbitration).

5.  The matters in which I was retained to serve either as a consulting or testifying expert from 2012 through the present are listed in Appendix A. The Brattle Group charges my customary hourly rate of $875 per hour for my time in this matter and is reimbursed for all out-of-pocket expenses in connection with this matter. My opinions are my own, and my compensation is not dependent on my opinions or the outcome of the case.

6.  My opinions and findings are based on information available to me at the time this report was prepared. The sources I relied upon in writing this report are listed in Appendix B. I reserve the right to supplement and/or amend this report if and when new information becomes available, including information obtained from the Defendants' expert reports and any additional discovery in this matter.

## III.    Summary of Opinions

7.  A "Fair Value" of Mindbody stock may be determined using generally accepted valuation techniques at any point during the Class Period. That same Fair Value applies to all stockholders and the methodology is the same for all stockholders.

8.  The Discounted Cash Flow ("DCF") method is an appropriate technique to determine Fair Value for Mindbody stock.

9. The calculation of the company's Fair Value is a factually intensive process, and will require a careful calibration to company-specific data that likely includes internal projections by management over time, as well as the market conditions, industry trends, and the state of the macro-economy at the time of the valuation.

10. A valuation can change over a period of time, but such changes can be accommodated within a consistent DCF framework.

## IV.  Overview of Company and Allegations

11. Mindbody was a rapidly growing software company in the online market for booking fitness classes and spa appointments.[5] Mindbody became a public company in 2015.[6] At the end of 2018, Vista Equity Partners made an offer to take Mindbody private at $36.50 per share, a 68% premium to the company's stock price at the time.[7] The transaction closed in the first quarter of 2019.[8]

12. Mindbody's founder, Chairman, and CEO Richard Stollmeyer and others in Mindbody's management are alleged to have intentionally lowballed their earnings guidance in late 2018 in order to reduce the company's stock price, so that the merger offer would seem generous to shareholders by comparison.[9] Management is alleged to have known that their earnings guidance was not consistent with their internal projections.[10] Mindbody management is alleged to have suppressed the release of the true fourth quarter 2018 earnings figures until after the merger transaction closed, because the true earnings would have confirmed that the company had beaten their prior earnings guidance and market expectations.[11]

---

[5]   Complaint, ¶¶68-73, and Revenue in Item 6 in 2017 10K.
[6]   Complaint, ¶67.
[7]   Complaint, ¶¶177.
[8]   Complaint, ¶233.
[9]   Complaint, ¶¶123, 132, 134, 144.
[10]  Complaint, ¶¶134, 143.
[11]  Complaint, ¶¶214-230.

# V.   Opinions

## V.A.   There are four generally accepted valuation techniques that are commonly used in corporate valuation.

13. Four generally accepted valuation techniques are most commonly used by industry practitioners to value companies: (1) the Discounted Cash Flow method ("DCF"), (2) the Comparable Company method ("Comparables"), (3) the Precedent Transactions method, and (4) Market Price.

14. The **DCF** method involves forecasts of the company's unlevered free cash flow into the future that are discounted at the firm's Weighted Average Cost of Capital ("WACC") to obtain an estimate of the firm's intrinsic value. DCF is the most detailed of the four approaches and requires the most estimates and assumptions. However, because the DCF model and its assumptions are company-specific, it can yield the most accurate valuation, and can account for privately held information. DCF is also amenable to estimating firm value based on different scenarios, and can be used to generate a sensitivity analysis to the assumptions and projections used in the model. DCF may also be the only viable method when the other methods cannot be applied.

15. The **Comparables** method estimates the current value of the company by comparing it to other similar public companies based on market-based metrics like the price-equity ratio ("P/E"), the ratio of enterprise value to earnings before interest, taxes, depreciation and amortization ("EV/EBITDA"), and other ratios. The effectiveness of a Comparables analysis depends on finding a set of peer group companies that have business attributes sufficiently alike to the subject firm's profile to make a comparison of ratios reasonable.

16. The **Precedent Transactions** method involves comparing the company to recent sales and purchases of similar companies based on the same comparison of ratios as in the Comparables analysis. The prices at which these precedent transactions occurred will have a take-over premium embedded within the price, which may need to be removed for an analysis of Fair Value. The effectiveness of a Precedent Transactions analysis depends on finding a set of

transactions where the target business attributes are sufficiently alike to the subject firm's profile to make a comparison of ratios reasonable.

17. The **Market Price** method values a company based on the price of its publicly traded securities. It may be used to determine Fair Value when conditions are such that the Market Price - or analyses based on it - are likely to reflect all and only the information that it is supposed to reflect under the conditions of the valuation.

### V.B.    The DCF method is an appropriate technique for determining the Fair Value of Mindbody

18. DCF does not require a set of comparable companies like the Comparables and Precedent Transactions methods, and it does not require an analysis of the Market Price of the company's shares. As noted above, DCF requires projections of company revenues and expenses into the future and an estimate of the company's WACC, both of which may be obtained through discovery, derived from data produced in discovery, and/or derived from publicly available sources. DCF can incorporate the private information known by company insiders about operations, earnings, and other financial projections.

### V.C.    DCF is applied differently when valuing young, growing companies versus mature companies

19. A DCF valuation of a young company in a new and growing market must be prepared differently from one of a mature company in a developed market. The difference is often greater when the firm is in the technology space. A DCF model comprises two principal projections: the forecasted revenues and expenses that are based on company specific inputs and assumptions, and a terminal value, which is placed at the end of the forecast and represents the value of the company beyond the yearly forecast period.

20. The terminal value is modelled as of the end of the forecast period as the net present value of a company's cash flow, which are assumed to grow at a set growth rate, called the perpetual

growth rate ("PGR") forever.[12] Except in unusual circumstances, the PGR is between the expected long-term rates of inflation and GDP growth. Therefore, the date in the future at which the terminal value is modeled must be a date past the time when the company is growing at a rate greater than the economy.

21. For a mature company, it is generally sufficient to set that date three to five years from the valuation date. For a rapidly growing tech company, that date must be significantly further in the future, because the growth curve of the company requires more time to run before it converges to a steady-state that reflects long-term expectations for the economy. That date is dependent upon where the company is on its growth curve on the valuation date, the specific inputs that are driven by the company's near-term projections, and how long it will take for the company's market to achieve saturation.

22. Because of this longer forecast period, a properly calibrated DCF analysis of a company like Mindbody will look different from that of a mature company. A longer forecast period also means that the model must carefully define how the inputs and assumptions change over time.

## V.D.   The parameters and inputs to a properly calibrated DCF model require company-specific, internal data

23. In general for a DCF model, but more so for a small, rapidly growing technology company like Mindbody, the valuation expert must derive the inputs and parameters for the model from the most accurate, company (or market)-specific data available. Ideally, a DCF model utilizes data that originate from within the company, since company insiders typically have material information that outsiders do not. Data from insiders are supplemented by publicly available data on industry trends, the product market, the competitive environment, the relevant academic literature, and the expertise and experience of the valuation expert.

---

[12]    Terminal multiples are also used. Given a terminal multiple and a discount rate, one can infer the implied PGR. Similarly, given a PGR and a discount rate, one can infer the terminal multiple.

24. In the particular case of Mindbody, a Fair Value model would also require the ability to differentiate the allegedly false statements made to the market by management from the true projections made by management.

## V.E.   A valuation can change over a period of time, but such changes can be modeled within a consistent framework

25. This matter may require valuation estimates of Mindbody at different dates over a period of weeks or months. Once an initial valuation model is parameterized, and a value is determined for a given day, deriving values for other days is possible from one (or a combination of) two methods.

26. First, the company-specific inputs into the model may be revised to reflect new information on other dates of interest. This is typically inside information – for instance, new internal projections based on a change in the company's perception of its growth prospects – which again highlights the usefulness of the company's internal documentation and models. In some cases, if it is not certain when material information was known (or how well known it was), one could take a weighted average of the old and the new information during the period of uncertainty.

27. Second, market wide effects can prompt a change in DCF model assumptions. For instance, if market interest rates rise, that will affect the discount rate of a DCF model making further-in-the-future cash flows less valuable in present value terms. DCF can also account for the effect of broader movements in market-wide stock prices on target-firm value expected based via standard market-models.

28. Under certain conditions, the market price of a company's stock can be used as a check on the reasonability of a DCF valuation. Such conditions may exist during time periods when there is no material private information, when the stock price is free to respond to all publicly available information (e.g., before a deal is announced or suspected), and when the market price can be appropriately adjusted to remove the impact of any false information.
Applying the effects of these events at the appropriate times will generate a time series of a company valuation that is financially reasonable, internally consistent, and reflects important market and company-specific events or changes in information.

### V.F.    These Fair Values are common to all class members and the methods used to derive them are common to all class members

29. These Fair Values are common to all class members and the methods used to derive them are common to all class members. The Fair Value of each share of Mindbody stock can be determined as a pro-rata share of the Fair Value of the firm, which is a determination that is common to all stockholders.


Benjamin Sacks

Washington D.C.

October 15, 2021

# Appendix A: Sacks Resume

**Benjamin Sacks** is a Principal in the Washington, DC office of The Brattle Group. Mr. Sacks has more than 20 years of experience assisting corporations, investors, U.S. government agencies, and foreign governments in developing and presenting economic and financial testimony in complex litigations and arbitrations. He has provided expert reports and testimony in numerous matters before Courts and arbitral Tribunals both in the United States and internationally.

Mr. Sacks has submitted expert reports and testimony in numerous valuations and corporate governance matters before international tribunals and U.S. courts. Recently, the Tribunal in *Devas v. India* (PCA Case No. 2013-09) accepted his testimony as the basis for DCF-based damages. Mr. Sacks also served as the economic damages expert for *Washington Post* reporter Jason Rezaian and his family in their lawsuit against the Islamic Republic of Iran and the Islamic Revolutionary Guard Corp, claiming damages for Iran's holding Mr. Rezaian hostage for more than a year. The court ordered Iran to pay $180 million in damages, including $10 million in economic damages and substantially adopted Mr. Sacks' analysis in reaching that figure. Mr. Sacks has extensive experience in valuation matters, including several Yukos-related arbitrations.

In a major U.S. litigation, Mr. Sacks was retained by shareholders in the *In Re Facebook Inc., Class C Reclassification Litigation* that sought to enjoin Facebook from issuing non-voting shares designed to allow Facebook's founder, Mr. Zuckerberg, to maintain his voting control of Facebook indefinitely. Mr. Sacks submitted expert reports and was deposed several times. Facebook cancelled its plans to issue those shares five days before trial was to begin.

Mr. Sacks teaches a Continuing Legal Education course on damages featuring several valuation case studies, has taught classes to attorneys on valuation and served as a panelist on damages at the recent Fordham Conference on International Arbitration in New York City. He has lectured at several law firms on the modern DCF method, which was used in the recent Tethyan matter. Mr. Sacks received his B.A. in mathematical economics from Columbia University and his M.A. in economics from the University of Chicago.

## AREAS OF EXPERTISE

- International Arbitration
- Finance, Valuation & Securities Analysis
- Commercial Damages & Lost Profits
- Statistical Analysis

## TESTIMONY and REPORTS

- *Public Employees' Retirement System of Mississippi, individually and on behalf of all others similarly situated v Advance Auto Parts, Inc., Thomas R. Greco, Thomas Okray, Starboard Value LP, and Jeffrey C. Smith, In The United States District Court For The District Of Delaware*, Case No. 1:18-cv-00212-MN. Reasonability of forecasts. Reports July, August and September 2021. Deposition October 2021.

- *Hollywood Firefighters' Pension Fund and Sheet Metal Workers' Local Union No. 80 Pension Trust Fund, on behalf of themselves and all others similarly situated v John C. Malone, Gregory B. Maffei, Gregg L. Engles, Ronald A. Duncan, Donne F. Fisher, and Richard R. Green*, Delaware Court of Chancery C.A. No. 2020-0880-SG. Fee application for settlement of corporate governance issues. Report July 2021, Deposition September 2021.

- *Matthew Sciabacucchi and Hialeah Employees' Retirement System, Individually and on Behalf of All Others Similarly Situated v John Malone, Gregory Maffei, Michael Huseby, Balan Nair, Eric Zinterhofer, Craig Jacobson, Thomas Rutledge, David Merritt, Lance Conn, John Markley, Defendants and Charter Communications, Nominal Defendant*, Delaware Court of Chancery C.A. No. 11418-VCG. Damages from alleged breach of fiduciary duty in the context of a merger. Reports January and March 2021. Deposition April 2021.

- Market Efficiency and possibility to calculate class-wide damages in *In Re Synchronoss Technologies, Inc. Securities Litigation*, United States District Court District Of New Jersey, Civil Action No. 17-2978 (FLW)(ZNQ). Reports October 2020 and March 2021. Deposition February 2021.

- Financial Analysis in *Washtenaw County Employees' Retirement System, Individually and on Behalf of All Others Similarly Situated, v. Walgreen Co., et al.*, United States District Court Northern District Of Illinois, Eastern Division, Case No. 1:15-cv-3187. Report November 2020. Deposition December 2020.

- Valuation of a Russian Trucking firm (London Court of International Arbitration). Reports 2018 and 2019. Testimony September 2019.

- Damages from improper oversight of servicing. *Phoenix Light SF DAC, et al. vs. The Bank of New York Mellon*, SDNY, Case No 1:18-cv-01194-VEC. Report September 2019. Deposition January 2020.

- Value of assets transferred out of a firm by the controlling shareholders. United States District Court for the Southern District of New York. Report June 2019.

- Valuation of a Canadian Telecommunications firm (ICSID). Reports February 2018 and January 2019. Testimony April 2019.

- *Mudrick Capital Management, L.P. and Warlander Asset Management, L.P., on behalf of themselves and all other similarly situated stockholders of Globalstar, Inc. and derivatively on behalf of Nominal Defendant Globalstar, Inc v. James Monroe, et. al*., Delaware Court of Chancery, C.A. No. 2018-0699 TMR. Benefit of Settlement relating to corporate governance changes at a telecommunications firm. Deposition and Report March 2019.

- Report on contractual damages relating to a buy/sell agreement for a controlling interest in a Korean Bank (International Chamber of Commerce). Report 2018.

- Valuation of Telecommunications firm in a developing country**.** Bilateral Investment Treaty heard under UNICTRAL rules, Permanent Court of Arbitration. Reports 2017 and 2018. Testimony 2018.

- *In Re Starz Stockholder Litigation*, Delaware Court of Chancery Consolidated C.A. No. 12584-VCG. Damages from alleged breach of fiduciary duty in the context of a merger. Reports and Deposition 2018.

- *NexBank, SSB v. Jeffrey Soffer and Jacquelyn Soffer*, Supreme Court of the State of New York, County of New York, Index No. 652072 / 2013. Value of real estate encumbered by cloud on title. Report January 2018.

- *In Re Facebook, Inc. Class C Reclassification Litigation*, Delaware Court of Chancery, Consolidated C.A. No 12286-VCL. Harm from issuance of zero vote stock. Reports and Deposition 2017. Additional Reports and Deposition 2018.

- Damages for Mr. Jason Rezaian, who was taken hostage by Iran. U.S. District Court for the District of Columbia. Civil Action No. 1:16-cv-01960-RJL. Report June 2017.

- *Application of the National Railroad Passenger Corporation under 49 U.S.C. § 24308(a) – Canadian National Railway Company*, Before the Surface Transportation Board, Finance Docket No. 35743, Verified Statement of Benjamin Sacks filed September 4, 2015. Expert testimony on a proposed penalty system for sub-standard service to Amtrak by host railroad. September 2015. Rebuttal filed September 2017.

- *SEC Administrative Proceeding in the Matter of BioElectronics Corp, et. al*., File No. 3-17104. Event study related to a corporate disclosure. Reports and Testimony, September 2016.

- Confidential Arbitration. Valuation of privately held telecommunications firm. Report October 2015.

- *State of West Virginia ex rel., Patrick Morrisey, Attorney General v. Wells Fargo Insurance Services of West Virginia and Wells Fargo Insurance Services USA, Inc.*, Circuit Court of Hancock County, WV, Civil Action No. 05-C-115 W. Deposition January 21, 2016. Expert Affidavit and disclosure on opinions regarding existence and size of alleged overcharge for insurance policies, and related damages. Reports September 2015; Deposition November 2015.

- *National Credit Union Administration Board, as Liquidating Agent of Central Federal Credit Union v. RBS Securities, et. al*, Case No. 11-cv-2340-JWL-JPO and *National Credit Union Administration Board, as Liquidating Agent of Western Corporate Federal Credit Union v. RBS Securities*, CV 11-05887 GW (JEMx), Declaration of Benjamin Sacks Regarding Compilation and Summarization of RBS Due Diligence data. October 2015.

- *United States of America, ex rel., Michael Saunders, v. Unisys, Inc.*, United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No 1:12 CV 379 GBL/TCB. Damages Report July 2014. Deposition, September 2014.

- *Curbow Family LLC v. Morgan Stanley Investment Advisors Inc.*, Index No. 651059/2010 (Sup. Ct. NY) and *Rotz v. Van Kampen Asset Management*, Index No. 651060/2010 (Sup. Ct. NY). Expert report in support of Plaintiff's opposition to a motion for summary judgment, September 2012.

- *Howard M. Ehrenberg, Chapter 7 Trustee for the Estate of Ruderman Capital Partners, LLC v. Kevin L. Washington, James King and Knight Capital Group, et al.*, Superior Court of the State of California for the County of Orange, Case No. 30-2011 00450602. Declaration filed in support of defendant's motion for summary judgment or adjudication of claims, July 2012.

- *In re Delphi Financial Group Shareholder Litigation*, Delaware Court of Chancery, Consolidated C.A. No. 7144-VCG. Expert report and deposition, February 2012.

- *Wolfson-Verrichia Group, et al., v. Metro Commercial Real Estate, Inc., et al.*, United States District Court for the Eastern District of Pennsylvania, No. 08-CV-4997. Expert report October 2011, deposition November 2011.

- FIFRA data compensation matter (AAA Arbitration), Summary of Expert Opinions disclosed October 2010. Testimony November 2010.

- *Eastbanc, Inc. and Anthony M. Lanier v. Georgetown Park Associates II Limited Partnership, et al*., Superior Court of the District of Columbia, 2006 CA 002291 B**.** Supplemental Expert Statement and Rule 26(b)(4) Statement filed October 2010, deposition December 2008, Rule 26(b)(4) Statement filed October 2008.

- *Navy Federal Credit Union v. Fiserv Solutions and XL Specialty Insurance Company*, Index No. 09-601217-2009. Affidavit Of Benjamin Sacks in Support of Plaintiff Navy Federal Credit Union's Motion for Partial Summary Judgment filed October 2010, Expert Witness Disclosure filed pursuant to New York State CPLR § 3101(d) filed September 2010.

- *In re ACS Shareholder Litigation, Delaware Court of Chancery*, Consolidated C.A. No. 4940-VCP**.** Expert reports March and April 2010. Deposition April 2010.

- FIFRA data compensation arbitration: Summary of Expert Opinions disclosed in August 2009.

- *Teachers Retirement System of Louisiana v. Maurice R. Greenberg, Edward E. Matthews, Howard I. Smith, Thomas R. Tizzio, and C. V. Starr & Co. Inc.*, Delaware Court of Chancery, C.A. No 20106-VCS. Expert reports January and May 2008. Deposition June 2008.

- PW 5672, Harrison County fee dispute with FEMA regarding reasonable costs. Expert written opinion July 2007.

- Breach of contract matter (AAA arbitration). Testimony October 2006.

## EXPERIENCE

### *International Arbitration / International Litigation*

- Valuations of shares in publicly traded Russian oil company (Bilateral Investment Treaty Dispute, Stockholm Chamber of Commerce).

- Valuation of firm assets and lost profits of a Russian oil company (European Court of Human Rights).

- Valuation of shares in a Russian oil company (Bilateral Investment Treaty Dispute, Stockholm Chamber of Commerce).

- Valuation of oil transshipment facility in Commonwealth of Independent States (London Court of International Arbitration).

- ICC arbitration involving construction of oil platforms in Brazil.

- Valuation of a Russian oil company (PCA).

- Consulting expert on annulment and enforcement proceedings relating to an ECT award.

- Valuation of mining concessions in Latin America (Bilateral Investment Treaty heard under UNICTRAL rules, Permanent Court of Arbitration).

- Valuation of a Russian Trucking firm (LCIA).

- Valuation of shares in a joint venture owning a Uranium mine located in the former Soviet Union (London Court of International Arbitration).

- Valuation of Canadian Telecommunications firm (ICSID).

- Valuation of a Telecommunications Company in a developing country (Bilateral Investment Treaty heard under UNICTRAL rules, Permanent Court of Arbitration).

- Contractual damages relating to a buy/sell agreement for a controlling interest in a Korean Bank (BIT, International Chamber of Commerce).

- Damages expert for Mr. Jason Rezaian, who was taken hostage by Iran. U.S. District Court for the District of Columbia. Civil Action No. 1:16-cv-01960-RJL.

- Valuation of shares in a holding company that owns a chain of luxury hotels.

- Valuation of an investment bank in the Commonwealth of Independent States (former Soviet Union).

- Consulting expert for private equity investors in a Korean bank (Bilateral Investment Treaty, ICSID).

- ICDR arbitration involving allegations of breach of contract, theft of trade secrets and tortious interference in the telecom / mobile applications industry.

- Lost profits and hypothetical licensing fee involving a Chinese chemical company (Bilateral Investment Treaty Dispute, Stockholm Chamber of Commerce).

### Finance and Valuation

- *Matthew Sciabacucchi and Hialeah Employees' Retirement System, Individually and on Behalf of All Others Similarly Situated v John Malone, Gregory Maffei, Michael Huseby, Balan Nair, Eric Zinterhofer, Craig Jacobson, Thomas Rutledge, David Merritt, Lance Conn, John Markley, Defendants and Charter Communications, Nominal Defendant*, Delaware Court of Chancery C.A. No. 11418-VCG. Damages from alleged breach of fiduciary duty in the context of a merger.

- Financial Analysis in *Washtenaw County Employees' Retirement System, Individually and on Behalf of All Others Similarly Situated, v. Walgreen Co., et al.*, United States District Court Northern District Of Illinois, Eastern Division, Case No. 1:15-cv-3187. Report November 2020.

- Market Efficiency and possibility to calculate class-wide damages in *In Re Synchronoss Technologies, Inc. Securities Litigation*, United States District Court District Of New Jersey, Civil Action No. 17-2978 (FLW)(ZNQ). Report October 2020.

- Opt out damages for a large 10b5 matter, in both US and Canadian jurisdictions. Confidential.

- *Mudrick Capital Management, L.P. and Warlander Asset Management, L.P., on behalf of themselves and all other similarly situated stockholders of Globalstar, Inc. and derivatively on behalf of Nominal Defendant Globalstar, Inc v. James Monroe, et. al*., Delaware Court of Chancery, C.A. No. 2018-0699 TMR. Testifying expert on benefit of Settlement relating to corporate governance changes, and other matters.

- Not disclosed. Testifying expert for a minority shareholder on the value of assets transferred out of a firm by the controlling shareholders. United States District Court for the Southern District of New York.

- Confidential consulting expert for a special litigation committee relating to a conflict-of-interest merger in the technology sector.

- *In Re Starz Stockholder Litigation*, Delaware Court of Chancery, Consolidated C.A. No. 12584-VCG. Testifying expert on damages from alleged breach of fiduciary duty in the context of a merger.

- *In Re Facebook, Inc. Class C Reclassification Litigation*, Delaware Court of Chancery, Consolidated C.A. No 12286-VCL. Testifying expert on the financial impact of the Reclassification on Facebook, Inc.'s stockholders, including its public Class A stockholders.

- *Teachers Retirement System of Louisiana v. Maurice R. Greenberg, Edward E. Matthews, Howard I. Smith, Thomas R. Tizzio, and C. V. Starr & Co. Inc.*, Delaware Court of Chancery, C.A. No 20106-VCS. Expert witness on economic evaluation of entire fairness regarding Hank Greenberg, the P&C MGA Starr and AIG.

- *NexBank, SSB v. Jeffrey Soffer and Jacquelyn Soffer*, Supreme Court of the State of New York, County of New York, Index No. 652072 / 2013. Testifying expert on value of real estate encumbered by cloud on title.

- Confidential matter involving management contract for a large REIT. Delaware Court of Chancery.

- *SEC Administrative Proceeding in the Matter of BioElectronics Corp, et. al.*, File No. 3-17104. Testifying expert on an event study related to a corporate disclosure.

- Confidential matter involving alleged self-dealing and breach of fiduciary duty, in large Mexican holding company. Delaware Court of Chancery.

- Confidential matter involving issuance of low voting stock. Delaware Court of Chancery.

- *Delphi Financial Group Shareholder Litigation*, Delaware Court of Chancery, Consolidated C.A. No. 7144-VCG. Expert witness on differential merger consideration offered to different classes of stock in a merger.

- *ACS Shareholder Litigation*, Delaware Court of Chancery, Consolidated C.A. No. 4940-VCP. Expert witness on differential merger consideration offered to different classes of stock in a merger.

- *Assured Guaranty (UK) LTD., in its own right and in the right of Orkney Re II PLC, v. J.P. Morgan Investment Management Inc.*, Index No. 603755/2008, consulting expert. Portfolio management standards and damages from alleged lack of suitability of investments.

- *Ambac Assurance UK LTD., in the name of Ballantyne Re PLC, v. J.P. Morgan Investment Management Inc.*, Index No. 650259/2009, consulting expert. Portfolio management standards and damages from alleged lack of suitability of investments.

- *U.S. Securities and Exchange Commission v. Daniel Mudd, Enrico Dallavecchia and Thomas Lund*, Civil Action No 11-CIV-9202. Rebuttal expert on impact on investors of Fannie Mae disclosures regarding credit characteristics of guarantee portfolio.

- *U.S. Securities and Exchange Commission v. Richard F, Syron, Patricia L. Cook and Donald J. Bisenius*, Civil Action No 11-CV-9201 (RJS). Testifying expert. Quantitative analysis of the loans in Freddie Mac's single family guarantee portfolio, loans underlying non-agency mortgage-backed securities, analysis of various Freddie Mac models.

- *Curbow Family LLC v. Morgan Stanley Investment Advisors Inc*., Index No. 651059/2010 (Sup. Ct. NY) and *Rotz v. Van Kampen Asset Management*, Index No. 651060/2010 (Sup. Ct. NY). Expert witness regarding damages stemming from the redemption of Auction Rate Preferred Securities.

- *Navy Federal Credit Union v. Fiserv Solutions and XL Specialty Insurance Company*, Index No. 09-601217-2009. Expert witness. Statistical analysis of automated valuation model usage.

- *Howard M. Ehrenberg, Chapter 7 Trustee for the Estate of Ruderman Capital Partners, LLC v. Kevin L. Washington*, James King and Knight Capital Group, et al., Superior Court of the State of California for the County of Orange, Case No. 30-2011 00450602. Expert witness. Statistical analysis of trading patterns in an alleged pump and dump scheme.

- *Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co. Incorporated*, Palm Beach County, Florida, Case No. 2003 CA 005045 AI. Economic and financial analysis of damages for Morgan Stanley.

- Valuation of insurance company in Delaware Chancery (confidential).

- Valuation of privately held telecommunications firm in U.S. arbitration. October 2015.

- Numerous cases against RMBS Trustees on behalf of investors. Consulting expert on reports covering: statistical sampling, the duties of Trustees, performance of mortgage servicers, quality of sponsor due diligence.

- Numerous cases for a major insurer against various banks for allegedly misrepresenting the quality of mortgages in RMBS. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *Phoenix Light SF Limited, et. al., v. The Bank of New York Mellon as Trustee*, Index No 14-cv-10104-(VEC). Consulting expert on statistical sampling and extrapolation.

- *Phoenix Light SF Limited, et. al., v. HSBC Bank USA, National Association*, Index No 14-cv-10101-SAS (rel 14-cv-09366-SAS). Consulting expert on statistical sampling and extrapolation.

- *The Western and Southern Life Insurance Company, et al., vs. The Bank of New York Mellon, Hamilton County, Ohio*, Case No. A1302490. Consulting expert on duties and powers of RMBS Trustee. January 2016.

- *National Credit Union Administration Board, as Liquidating Agent of Central Federal Credit Union v. RBS Securities, et al.*, Case No. 11-cv-2340-JWL-JPO and National Credit Union Administration Board, as Liquidating Agent of Western Corporate Federal Credit Union v. RBS Securities CV 11-05887 GW (JEMx), Declaration of Benjamin Sacks Regarding Compilation and Summarization of RBS Due Diligence data. October 2015.

- *National Credit Union Administration Board, as Liquidating Agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union, v. Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp.*, Case No. 13-CV-6736 (DLC), Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *National Credit Union Administration Board, as Liquidating Agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union, v. Morgan Stanley & Co., and Morgan Stanley Capital I Inc.*, Case No. 13-CV-6705 (DLC). Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *National Credit Union Administration Board, as Liquidating Agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union, v. UBS Securities LLC.* Case No. 13-CV-6731 (DLC). Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *Federal Home Loan Bank of Seattle v. Goldman Sachs & Co, et al.*, Case No. 09-2-46349-2 SEA. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *Federal Home Loan Bank of Seattle v. RBS Securities Inc., f/k/a Greenwich Capital Markets, Inc., et al.*, Case No. 09-2-46347-6 SEA. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *Federal Home Loan Bank of Seattle v. Bank of America securities LLC, et al.*, Case No. 09-2-46319-1 SEA. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *Federal Home Loan Bank of Seattle v. Merrill Lynch, Pierce, Fenner & Smith, Inc. et al.*, Case No. 09-2-46352-2 SEA. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *Federal Home Loan Bank of Seattle v. Morgan Stanley & Co, Inc., et al.*, Case No. 09-2-46348-1 SEA. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *Federal Home Loan Bank of Seattle v. Credit Suisse Securities USA LLC, et al.*, Case No. 09-2-46353-1 SEA. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *In Re: Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, MDL No. 11-ML-02265-MRP (MANx), Federal Deposit Insurance Corporation As Receiver For Franklin Bank v. Countrywide Financial Corp., et al., Case No. 12-CV-03279-MRP (MANx). Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *In Re: Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, MDL No. 11-ML-02265-MRP (MANx), Federal Deposit Insurance Corporation As Receiver For United Western Bank v. Countrywide Financial Corp., et al., Case No. 11-CV-10400-MRP (MANx). Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *The Western and Southern Life Insurance Company, et al. Plaintiffs, v. DLJ Mortgage Capital, Inc., et al.*, Defendants, Court of Common Pleas, Hamilton County, Ohio, Case No. A05352. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *National Integrity Life Insurance Company, Plaintiff v. Countrywide Financial Corp. et al.*, Defendants, United States District Court for the Southern District of New York, case No 11-CIV-8011. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- *The Western and Southern Life Insurance Company, et al. Plaintiffs, v. Morgan Stanley Mortgage Capital, Inc., et al.*, Defendants, Court of Common Pleas, Hamilton County, Ohio, Case No. A1105563. Consulting expert. Statistical analysis of due diligence and underwriting regarding residential mortgages and mortgage backed securities.

- Lost profits and lost business value due to fraud (Chinese drywall). Matter is confidential.

Written Evidence of Benjamin Sacks                                                                 Page 19 of 25

- Impact of ratings downgrade and loss of reputation for Saudi real estate firm.

- Consulting expert on the impact of alleged non-disclosure of material information on the sale price of European pharmaceutical subdivision. Matter is confidential.

- Consulting expert on valuation of oil rigs. Matter is confidential.

- Evaluation of economic content in multiple alleged tax-shelter transactions.

- Estimation of the value of residual value of auto leases with claimed losses totaling more than $500 million for a coalition of insurance carriers.

### *Damages and Lost Profits*

- *State of West Virginia ex rel., Patrick Morrisey, Attorney General v. Wells Fargo Insurance Services of West Virginia and Wells Fargo Insurance Services USA, Inc.*, Circuit Court of Hancock County, WV, Civil Action No. 05-C-115 W. Expert disclosure and Affidavit on opinions regarding existence and size of alleged overcharge for insurance policies, and related damages.

- *Application of the National Railroad Passenger Corporation under 49 U.S.C. § 24308(a) – Canadian National Railway Company, Before the Surface Transportation Board*, Finance Docket No. 35743, Verified Statement of Benjamin Sacks filed September 4, 2015. Expert testimony on a proposed penalty system for sub-standard service to Amtrak by host railroad. Rebuttal filed September 2017.

- *United States of America, ex rel., Michael Saunders, v. Unisys, Inc.*, United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No 1:12 CV 379 GBL/TCB. Expert witness on damages from alleged billing fraud on a government contract.

- *Wolfson-Verrichia Group, et al., v. Metro Commercial Real Estate, Inc., et al.*, United States District Court for the Eastern District of Pennsylvania, No. 08-CV-4997. Expert witness on damages, retail shopping center development and anchor site selection.

- *Eastbanc, Inc. v. Georgetown Park Associates II Limited Partnership, Georgetown Park Partners, LLC, and Herbert S. Miller*, Superior Court of the District of Columbia, 2006 CA 002291 B. Expert witness on lost profits from failure / delay in developing a retail mall.

- *Norfolk Southern Railway Company v. Drummond Coal Sales, Inc.*, U.S. District Court, Western District of Virginia. Civil Action No. 7:08CV00340. Consulting Expert.

- *PBM Products LLC v. Mead Johnson Nutrition Company and Mead Johnson & Company*, Eastern District of Virginia, C.A. No. 3:09CV269. Consulting expert on lost profits from false advertising.

- *National Railroad Passenger Corporation vs. ExpressTrak, LLC*, United States District Court for the District of Columbia, Index No. 02-CV-1773. Consulting expert on lost profits and operational performance.

- Expert witness on compensable costs in multiple FIFRA data compensation arbitrations. I calculated the compensation payable by a generic pesticide maker to a data owner for relying on that data to register its own equivalent product.

- Consulting expert on damages due to infringement of database security patents. Matter is confidential.

- Expert opinion on reasonable costs in PW 5672, Harrison County fee dispute with FEMA.

- Expert witness on liability and damages in a confidential arbitration (three judge panel AAA arbitration proceedings) regarding breach of contract.

- Modeled damages in a breach-of-contract dispute for a large supermarket chain.

### *Mass Tort and Environmental Liability*

- W.R. Grace & Co., et. al., United States District Court for the District of Delaware, Case Nos. 11-1139 through 01-1200. Estimation of foreseeable contingent liability for Sealed Air.

- Estimation of asbestos liability for a large asbestos-product manufacturing firm in a fraudulent conveyance matter.

- Estimation of silica-related liability for a major auto parts manufacturer.

- Financial reporting requirements, insurance and access to capital markets for several major companies with asbestos liability, including a large asbestos defendant, a $15 billion (sales) manufacturer, and a $4 billion (sales) manufacturer.

- Kaiser Aluminum Corporation, United States Bankruptcy for the District of Delaware, Case No: 02-10429. Estimation of asbestos liability on behalf of official committee of unsecured creditors.

- Directed due diligence on asbestos liability issues for multiple M&A transactions ranging from $50 million to $7 billion in value.

- Porter-Hayden Company, United States Bankruptcy for the District of Maryland, Case No: 02-54152 and related insurance coverage litigation. Estimation of asbestos liability for a major insurance carrier.

- Owens Corning, a Delaware Corporation, United States Bankruptcy for the District of Delaware, Case No: 00-03837 and related insurance coverage litigation. Estimation of asbestos liability for coalition of insurance carriers.

- Estimation of asbestos liability for a major insurance carrier on asbestos liability in the Western MacArthur Bankruptcy.

- The Babcock and Wilcox Company, Diamond Power International, Inc., Babcock and Wilcox Construction Company, Inc., Americon Inc., United States Bankruptcy Court, Eastern District of Louisiana, New Orleans, Case No: 00-10992. Estimation of asbestos liability on behalf of insurance carriers.

- Plibrico Company and David Gerity, United States Bankruptcy for the Northern District of Illinois, Case No: 02-BK-09952 and related insurance coverage litigation. Estimation of asbestos liability for a major insurance carrier.

- Armstrong World Industries, Inc., United States Bankruptcy for the District of Delaware, Case No: 00-04471 and related insurance coverage litigation. Estimation of asbestos liability for a major insurance carrier.

- Estimation of asbestos liability for insurance buy-out and coverage acquisition negotiation support for a $15 billion (sales) manufacturer, CSX, a $4 billion (sales) manufacturer, and a $2 billion (sales) chemical company.

- Armstrong World Industries, Inc., United States Bankruptcy for the District of Delaware, Case No: 00-04471 and related insurance coverage litigation. Estimation of asbestos liability for a major insurance carrier.

*Other*

- *United States of America, Plaintiff and Texas League of Young Voters Education Fund; and Imani Clark, Plaintiff-Intervenors v. State of Texas, et al.*, United States District Court for the Southern District of Texas Corpus Christi Division, Civ. No. 2:13-vc-00263. Consulting expert supporting Dr. Coleman Bazelon on behalf of the NAACP Legal Defense Fund in Texas voter ID litigation.

- Consulting expert on matter involving claims under Section 1 and 2 of the Sherman Act.

- Developed a method, which was accepted by a regulatory agency, for monitoring the regulatory compliance of a large telecommunications company.

- Supported expert analysis and report in multiple '337 proceedings before the ITC.

## ACADEMIC PAPERS

- Sacks, B.A, J.V. Hotz, C. Mulligan, and A. Zellner: "Three Essays on Bayesian Methods for Analyzing Limited Dependent Variable and Multinomial Choice Models with Measurement Error and Missing Data." Applications of Monte Carlo methods to statistical estimation.

- Sacks, B.A., and A. Zellner: "Bayesian Method of Moments (BMOM) Analysis of the Multiple Regression Model with Autocorrelated Errors." Presented paper at the 1996 summer conference of the International Society for Bayesian Analysis.

## PRESENTATIONS

- Speaker on Knowledge Group webcast October 21, 2020. Topic "Valuation and Forensic Accounting: Demystifying Trends, Critical Issues, and Best Practices"

- Lecture on the modern DCF method as used in the Tethyan matter (joint with Dr. Florin Dorobantu), February 2020: WilmerHale, Voltera Fietta, Boies Schiller, White & Case.

- Panelist November 2019 at Fordham Conference on International Arbitration and Mediation in New York City.

- Panelist March 2018 Juris International Arbitration conference. Session entitled "To Hot Tub or Not to Hot Tub?," March 6, 2018 in Washington D.C.

- CLE Presentation on Facebook Reclassification matter. Cleary Gottlieb, Washington, D.C., 2017.

- Panelist at May 2016 Juris International Arbitration conference. Session entitled "Damages in investment arbitration – a revolutionary remedy or reward for rich corporations at the expense of the world's poor? A fundamental examination of Chorzow's children." May 12-13, 2016 in Washington D.C.

- Seminar on DCF valuation presented to Debevoise and Plimpton, New York City, March 19, 2015.

- CLE Presentation "Lessons for Attorneys from Damages War-Stories" at WilmerHale, Washington, D.C., June 22, 2011, Venable, Washington, D.C., October 18, 2011, Kramer Levin Naftalis & Frankel, New York City, November 10, 2011, White & Case, Washington, D.C., November 15, 2011, Cadwalader Wickersham & Taft, New York City, November 17, 2011; Dilworth Paxson, Philadelphia, November 30, 2011; Baker Botts, Washington, D.C., December 19, 2011; Bernstein Litowitz Berger & Grossmann, New York City, February 16 2012; New York County Lawyers Association, February 28, 2012; Cleary Gottlieb Steen & Hamilton, Washington, D.C., June 6, 2013; Day Pitney, Newark, NJ, December 6, 2013.

- Securities and Exchange Commission, Washington, D.C., June 17, 2010. Presented on corporate governance and self-dealing.

- Lex Mundi Conference, Rome, Italy, March 5, 2004. Presented "Economic experts and asbestos liability."

- Asbestos Alliance Teach-In (joint with Jefferies & Company, Inc., and Sonnenschein Nath and Rosenthal), via teleconference, December 16, 2002. Lecturer.

- Credit Suisse First Boston, New York, New York, April 2001. Presented "Asbestos liability and M&A and divestitures."

# Appendix B: Material Relied Upon

- Second Amended Class Action Complaint, ECF No. 95, filed August 18, 2021

- Schedule 14A, January 9, 2019, at 42 at https://www.sec.gov/Archives/edgar/data/1458962—/000119312519005308/0001193125-19-005308-index.htm

- Schedule 14A, January 23, 2019, at 42, https://www.sec.gov/Archives/edgar/data/1458962/000119312519014341/d681305ddefm14a.htm#toc681305_44

- Mindbody 2017 10K, https://www.sec.gov/Archives/edgar/data/1458962/000145896218000003/mb_12-31x2017x10xk.htm