**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MINDBODY, INC. SECURITIES LITIGATION | Civil Action No. 1:19-cv-08331-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

I.      Procedural History and Co-Lead Plaintiffs' Investigation............................................. 2

II.     Discovery, Motion to Amend, and Class Certification.................................................... 4

III.    Negotiation of the Settlement and the Terms of the Proposed Settlement ...................... 5

ARGUMENT ............................................................................................................................... 6

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 6

        A.      Standards for Preliminary Approval of a Proposed Class Action
                Settlement ............................................................................................................. 6

        B.      Rule 23(e)(2)(A): Zealous Representation.............................................................. 9

        C.      Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith,
                Informed, and Arm's-Length Negotiations by Experienced Counsel ................... 9

        D.      Rule 23(e)(2)(C): The Settlement Provides Significant and Certain
                Benefits ............................................................................................................... 11

                1.      Despite Strong Claims, Many Risks to Recovery Remained ................. 11

                2.      The Effective Process for Distributing Relief to the Settlement
                        Class...................................................................................................... 16

                3.      The Settlement Does Not Excessively Compensate Lead Counsel ......... 17

        E.      Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to
                One Another......................................................................................................... 18

II.     PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS ........................ 19

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................... 20

IV.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS .......................... 22

CONCLUSION........................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................9, 10, 11

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972) ..........................................................................................................20

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   293 F.R.D. 459 (S.D.N.Y. 2013) .........................................................................................7

*Basic v. Levinson*,
   485 U.S. 224 (1988) .....................................................................................................11, 20

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .........................................................................................7

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   No. 12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) ................................17

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................................................8

*Friedman v. Guthy-Renker*, LLC,
   No. 2:14-cv-06009-ODW, 2016 WL 5402170 (C.D. Cal. Sept. 26, 2016) ..............................8

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................................17

*In re HealthSouth Corp. Sec. Litig.*,
   334 F. App'x. 248 (11th Cir. 2009) .....................................................................................8

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .......................................................................................20

*In re Indep. Energy Holdings PLC*,
   No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................10

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ..................................................................................15, 16

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................................18

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)..................................................................................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)............................................................................................20, 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)..................................................................................8

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18-cv-6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)................................17

*Vaccaro v. New Source Energy Partners L.P.*,
   No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ........17, 18

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-MDL-01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)..........10, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................6, 7, 21

*Yang v. Focus Media Holding Ltd.*,
   No. 11-9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .....................................6

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...................................................................................................18

15 U.S.C. §78u-4(a)(7)(A)-(F)........................................................................................21

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................................4

Fed. R. Civ. P. 12(b)(6).....................................................................................................4

Fed. R. Civ. P. 23 .............................................................................................................19

Fed. R. Civ. P. 23(a) ........................................................................................................19

Fed. R. Civ. P. 23(a)(1).....................................................................................................6

Fed. R. Civ. P. 23(b)(3).....................................................................................................19

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................20

Fed. R. Civ. P. 23(e) ..........................................................................................1, 7

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................7

Fed. R. Civ. P. 23(e)(2) ......................................................................................7, 8

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................9

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................11

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................18

Fed. R. Civ. P. 23(e)(3) ..........................................................................................8

Fed. R. Civ. P. 41(a)(1) ..........................................................................................6

**Other  Authority**

Manual for Complex Litigation (4th ed. 2004) ......................................................8

William B. Rubenstein, NewBerg on Class Actions (5th ed. 2015) .......................7

## PRELIMINARY STATEMENT

Co-Lead Plaintiffs Walleye Trading LLC and Walleye Opportunities Master Fund Ltd. ("Co-Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class,[1] submit this memorandum of law in support of their motion for preliminary approval of the proposed Settlement reached in the above-captioned class action (the "Action"). The Settlement would provide a recovery of $9,750,000 in cash to resolve this securities class action brought against MINDBODY, Inc. ("Mindbody" or the "Company"), Richard L. Stollmeyer, Brett White, and Eric Liaw (collectively, the "Individual Defendants" and, with Mindbody, "Defendants"). The terms of the proposed settlement are set forth in the Stipulation, which was entered into by all Parties to the litigation.

Co-Lead Plaintiffs respectfully submit that the Settlement warrants preliminary approval by the Court given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected mediator, represents a favorable recovery that falls well within the range of possible approval, and is likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent. Through the Court's grant of preliminary approval, Co-Lead Plaintiffs will be able to provide notice of the Settlement's terms and conditions to potential members of the Settlement Class. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve

---

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated March 3, 2022 (the "Stipulation"). The Stipulation is annexed as Exhibit 1 to the Declaration of Carol C. Villegas ("Villegas Decl."), filed herewith.

the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order, submitted herewith, has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Co-Lead Plaintiffs as class representatives and Lead Counsel as class counsel, for purposes of the Settlement only; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release ("Claim Form"), and Summary Notice, attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement to Co-Lead Plaintiffs pursuant to the PSLRA; and (vi) appoint Strategic Claims Services ("SCS"), which was selected after a competitive bidding process, to administer the notice and claims process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Procedural History and Co-Lead Plaintiffs' Investigation

On September 6, 2019, Co-Lead Plaintiffs filed a securities class action complaint in the U.S. District Court for the Southern District of New York (the "Court"), styled *Walleye Trading LLC v. Mindbody Inc., Richard L. Stollmeyer, and Brett White*, No. 1:19-cv-08331 (ECF No. 1), asserting violations of the Securities Exchange Act of 1934 (the "Exchange Act").  Co-Lead

Plaintiffs asserted claims on behalf of all former owners of Mindbody Class A common stock who sold shares, during the period from November 7, 2018 through February 15, 2019, both dates inclusive. Co-Lead Plaintiffs alleged misstatements and omissions in connection with Mindbody's acquisition by Vista Equity Partners (the "Merger") and in connection with Mindbody's Fourth Quarter 2018 revenue.

On November 7, 2019, the Court issued an order appointing Walleye Trading LLC and Walleye Opportunities Master Fund Ltd. as Co-Lead Plaintiffs and appointing Labaton Sucharow LLP as Lead Counsel in the Action. ECF No. 16.

Prior to and after their appointment, Co-Lead Plaintiffs engaged in a thorough investigation for the purpose of drafting a comprehensive amended complaint that would survive the strictures of the PSLRA, which included, the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, Mindbody earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses. Lead Counsel also contacted 88 former Mindbody employees, and interviewed 25 of them. Lead Counsel also consulted with experts in the fields of damages, market efficiency, and corporate valuation.

Beginning November 14, 2019, Co-Lead Plaintiffs filed petitions, pursuant to Delaware Court of Chancery Rule 5.1(f) and the First Amendment to the Constitution of the United States, challenging the confidential treatment of certain documents in the action *In re Mindbody Stockholder Litigation*, C.A. No. 2019-0442-KSJM (Del. Ch.) (the "Luxor Action"), a class action

and appraisal proceeding challenging the acquisition of Mindbody by Vista Equity Partners ("Vista").  Those petitions and subsequent negotiations with the parties to the Luxor Action resulted in a partial unsealing of documents relevant to the claims in the Action.

On December 20, 2019, Co-Lead Plaintiffs filed an Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 22) (the "Amended Complaint") asserting the same claims as stated in the initial complaint, but asserting additional allegations in connection with the Merger and in connection with Mindbody's Fourth Quarter 2018 revenue.

On February 18, 2020, Defendants filed a motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the PSLRA.  ECF No. 35.  On April 3, 2020, Co-Lead Plaintiffs filed an opposition to the motion to dismiss (ECF No. 39) and Defendants filed a reply in further support of the motion to dismiss on May 4, 2020 (ECF No. 42). With leave of the Court, Co-Lead Plaintiffs filed a sur-reply on May 22, 2020 in opposition to the motion to dismiss (ECF No. 46) and, with leave of the Court, Defendants filed a sur-reply in further support of the motion to dismiss on June 6, 2020 (ECF No. 49). On September 25, 2020, the Court partially granted and partially denied Defendants' motion to dismiss the Action.  ECF No. 52.

## II.     Discovery, Motion to Amend, and Class Certification

Following the Court's order on the motion to dismiss, the Parties engaged in an extensive discovery process.  Co-Lead Plaintiffs and Defendants exchanged written discovery of the Parties and relevant third-parties.  Lead Counsel met and conferred with Defendants' Counsel and third parties over the scope of fact discovery.  Defendants, Co-Lead Plaintiffs, and third parties collectively produced more than 400,000 pages of documents, including text messages.  Lead Counsel participated in 13 depositions (and was preparing for the depositions of additional witnesses, at the time the Parties settled).

On February 24, 2021, Co-Lead Plaintiffs filed a letter motion seeking leave to file a second amended complaint (the "SAC").  On March 12, 2021, Defendants filed an opposition to Co-Lead Plaintiffs' motion seeking leave to amend (ECF No. 86) and on March 19, 2021, Co-Lead Plaintiffs filed a reply in further support of the motion seeking leave to amend (ECF No. 89).  The Court granted Co-Lead Plaintiffs' motion on August 12, 2021(ECF No. 93), and Co-Lead Plaintiffs filed the SAC on August 18, 2021.  ECF Nos. 94 – 95.

On October 15, 2021, Co-Lead Plaintiffs filed their motion for class certification, which was accompanied by two expert reports in support of the motion: one on market efficiency and the calculation of damages and another on corporate valuation.  ECF Nos. 105 – 107.

## III.    Negotiation of the Settlement and the Terms of the Proposed Settlement

At various points during the litigation, counsel for the Parties conferred about the possibility of a pre-trial resolution of the Action.  The Parties agreed to engage in mediation and retained Michelle Yoshida of Phillips ADR ("Mediator") to act as mediator in the Action.  On May 12, 2021, the Parties participated in a full-day mediation session before the Mediator.  In advance of that session, the Parties provided detailed mediation statements and exhibits to the Mediator, which addressed issues of liability, class certification, and damages.  No agreement was reached during that mediation.

The Parties continued to discuss a potential settlement with the assistance of the Mediator over the course of the next few months.  On November 30, 2021, the Mediator made a formal mediator's proposal recommending that the Parties agree to settle the case for $9,750,000.  On December 2, 2021, the Parties accepted the mediator's proposal, which was memorialized in a binding term sheet executed and finalized on December 22, 2021 (the "Term Sheet"), subject to the execution of a "customary long form" stipulation and agreement of settlement and related

papers.  On December 22, 2021, the Parties notified the court of the Settlement and requested a stay of the Action, which was ordered on December 23, 2021.  ECF No. 112.

The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims ("Released Plaintiff's Claims").  Upon entry of the Preliminary Approval Order, the Parties will also file a stipulation, pursuant to Fed. R. Civ. P. 41(a)(1), dismissing the claims against Defendant White without prejudice.  Once the Settlement reaches its Effective Date, the Released Plaintiff's Claims against Defendants and the other Released Defendant Parties will be forever dismissed with prejudice.[2]  In exchange for these releases, within twenty business days of the later of entry of the Preliminary Approval Order or the provision of complete payment information, Mindbody will pay, or cause the payment of, $9,750,000 for the benefit of the Settlement Class.

## ARGUMENT

## I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.      Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation.  *See Yang v. Focus Media Holding Ltd.,* No. 11-9051, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements[.]"[3] This is especially so in securities class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of

---

[2] If the Settlement does not reach its Effective Date, Defendant White will be restored as a defendant and the Parties will revert to their litigation positions as of December 2, 2021. Stipulation ¶47.

[3] All internal quotations and citations are omitted, unless otherwise noted.

settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.,* 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.,* 293 F.R.D. 459, 464 (S.D.N.Y. 2013).  District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th ed. 2015).  The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Id*. at §13:13.

Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2), and be able to certify the class.  Rule 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

    (A)     class representatives and counsel have adequately represented the class;

    (B)     the proposal was negotiated at arm's length;

    (C)     the relief provided for the class is adequate, taking into account:

            (i)     the costs, risks, and delay of trial and appeal;

            (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

            (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3);[4] and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]  The Rule 23 amendment, which became effective in December 2018, has not changed the overall standard for approving a settlement, *i.e.* whether or not the settlement is fundamentally fair, adequate, and reasonable.  The proposed Settlement here readily satisfies all these factors and should be preliminarily approved.  *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

---

[4] Here, on December 22, 2021 the Parties entered into a settlement term sheet and on March 3, 2022, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement").  Stipulation at ¶42.  The Supplemental Agreement sets forth the conditions under which Mindbody has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  *See, e.g.,* Manual for Complex Litigation, §21.631 at 319 (4th ed. 2004) ("Opt-out agreements, in which a defendant conditions its agreement on a limit on the number or value of opt outs, that will vitiate a settlement might encourage third parties to solicit class members to opt out. A common practice is to receive information about such agreements *in camera*."); *In re HealthSouth Corp. Sec. Litig.,* 334 F. App'x. 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *Friedman v. Guthy-Renker,* LLC, No. 2:14-cv-06009-ODW (AGRx), 2016 WL 5402170, at *2 (C.D. Cal. Sept. 26, 2016) ("Publicly disclosing the opt-out threshold would practically invite professional objectors to threaten the settlement by soliciting opt-outs. The Court concludes that this potential for abuse outweighs the interest in public access to this information."). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

[5] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability and damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the defendants to withstand a greater judgment; and (7) the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation.  *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

### B.     Rule 23(e)(2)(A): Zealous Representation

Co-Lead Plaintiffs and Lead Counsel have zealously prosecuted the Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits.  Co-Lead Plaintiffs have been active and informed participants in the litigation. Faithfully executing this duty, Co-Lead Plaintiffs regularly communicated with Lead Counsel, responded to discovery requests, evaluated the Settlement Class's and Defendants' best arguments concerning liability and damages, and were consulted on and approved the terms of the Settlement.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company and interviews of 25 former employees; (ii) briefing on Defendants' motion to dismiss; (iii) engaging in extensive discovery efforts; and (iv) working with experts in damages and valuation issues.  Lead Counsel evaluated the potential risks in the case and negotiated vigorously to secure the $9.75 million recovery. Accordingly, the Settlement Class has been, and remains, well represented.

### C.     Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014).   The Settlement is entitled to this

presumption because it was achieved after thorough arm's-length negotiations with the assistance of a mediator and well-informed and experienced counsel—on both sides.[6]  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]").

Here, Co-Lead Plaintiffs are represented by an experienced and skilled firm in securities class litigation.  *See* Villegas Decl., Ex. 2.  Lead Counsel believes that the achieved Settlement is a very favorable result for the Settlement Class given the attendant risks to ongoing litigation and recommends that the Settlement be preliminarily approved.

Second, Co-Lead Plaintiffs and Lead Counsel only agreed to settle the claims after a rigorous factual investigation, discovery, consultation with experts, and after testing the Parties' claims and defenses through a mediation process overseen by a highly experienced third-party neutral.  In fact, the accepted Settlement was the product of a full day mediation, months of negotiations, and was the result of the Mediator's own recommendation to the Parties.  "[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."  *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

Finally, the Settlement was negotiated with the oversight of Co-Lead Plaintiffs, sophisticated institutional investors, which recommend that the Settlement be approved.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption

---

[6] Defendants are represented by two well-regarded law firms: Kirkland & Ellis LLP and Cooley LLP.

of reasonableness.'").  Thus, the procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting approval.

**D.      Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits**

**1.      <u>Despite Strong Claims, Many Risks to Recovery Remained</u>**

To determine whether a proposed Settlement is fair, reasonable, and adequate, courts balance the risks of continuing litigation against the benefits afforded to class members through settlement.  Although Co-Lead Plaintiffs and Lead Counsel believe the claims to be strong, they acknowledge that Defendants advance several substantial arguments concerning liability, class certification, and damages.  It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet."  *In re Advanced Battery*, 298 F.R.D. at 177.  Had the case not settled, Co-Lead Plaintiffs and the Settlement Class faced the prospect of years of additional and risky litigation involving contested certification of the class, completion of fact and expert discovery, complex dueling summary judgment motions, trial, and inevitable appeals.

**Risks to Achieving and Maintaining Class Certification**:  As an initial matter, Co-Lead Plaintiffs' motion for class certification was pending, and not fully briefed, when the Parties agreed to settle.  Defendants had not yet submitted their response to Co-Lead Plaintiffs' motion.  However, Defendants could have challenged class certification with respect to reliance, arguing that Co-Lead Plaintiffs cannot establish reliance on a class wide basis because Co-Lead Plaintiffs would not be able to rely on the fraud-on-the market presumption set forth in *Basic v. Levinson*, 485 U.S. 224 (1988) for the entire Class Period.  With respect to the typicality of Co-Lead Plaintiffs, Defendants would likely have argued that their trading history makes them atypical.  There was significant uncertainty with respect to how the Court would rule on class certification or whether certification would be maintained through a potential appeal and a trial, militating in favor of settlement.

**Risks in Proving Falsity and Scienter:** As alleged in the SAC, Defendants issued 4Q18 guidance that was allegedly lower than their true expectations for Mindbody and attributed the reduced guidance to issues with the integration of two recent acquisitions, allegedly in order to drive down the Company's stock price.  The SAC also alleged that despite learning that Mindbody had beaten its 4Q18 guidance, Defendants did not disclose these results.  Instead, the SAC alleged that the Company issued proxies that misleadingly touted the merger premium, despite knowing that the premium was misleading in light of the false guidance and results, and denied that Defendant Stollmeyer had engaged in any discussions with Vista about post-merger employment, when he had, allegedly, done so.

Co-Lead Plaintiffs would have faced significant challenges at summary judgment and trial in connection with these allegations and ultimately proving falsity and scienter for the statements concerning 4Q18 false guidance, 4Q18 results, and Defendant Stollmeyer's employment conversations.

Regarding Defendants' statements concerning 4Q18 reduced guidance, Defendants were expected to advance evidence supporting arguments that the 4Q18 downward guidance reflected a good-faith business judgment by Company management because of the risks the Company was facing, and was therefore not false and misleading.  Defendants would argue that there is nothing inherently false or misleading about conservative guidance and that, to the contrary, the market expects companies to guide below their internal projections.  Likewise, Defendants also would likely have argued that any inconsistencies between their internal expectations and public guidance were not material.

Regarding the employment discussions, Defendants were expected to show that the proxy materials, which stated that no post-closing employment discussions had taken place, were

completely accurate and that no conversations took place.

Co-Lead Plaintiffs would have also faced obstacles in pleading and proving that Defendants acted with the required intent to defraud or severe recklessness necessary to establish Defendants' scienter. Defendants would likely have argued that even if the trier of fact finds that guidance must match forecasting, the Defendants did not believe that to be the case when they made the 4Q18 guidance statements and believed the guidance was appropriate given their subjective view of the risks the Company faced.

Lastly, with respect to the Company's alleged nondisclosure of the 4Q18 revenue results, Defendants would likely argue that Co-Lead Plaintiffs would not be able to show that Defendant Stollmeyer was responsible for the decision regarding whether to announce the 4Q results. Defendants would also likely argue that announcement of the results was not warranted or appropriate in good faith because the evidence would show that releasing the revenue without full-year 2019 guidance would provide investors with an incomplete and misleading picture.

**Risks in Proving Loss Causation and Damages:** Even if the hurdles to establishing liability and class certification were overcome, Co-Lead Plaintiffs would have confronted significant challenges in proving loss causation and damages. Proving that the fair value of Mindbody stock was higher than the prices class members received when they sold Mindbody stock would be very difficult, and would have been hotly contested by the Parties' experts. Although Co-Lead Plaintiffs have retained a well-respected expert to explain why the Company's fair value exceeded the prices members of the class sold their shares for during the Class Period, Defendants would have put forth their own experts who would argue to the contrary. Ultimately, the fair value of the shares would be the subject of a complex "battle of the experts" and up to a jury to decide.

13

With respect to loss causation, Defendants would have likely argued that the alleged misstatements did not cause Mindbody's stock price to drop.  Among other things, Defendants would argue that to recover damages Co-Lead Plaintiffs would need to prove that had the 4Q18 results been disclosed Mindbody's stock would have traded at a higher price, and would have argued that Co-Lead Plaintiffs had not demonstrated that Mindbody's stock would have traded at a higher price.  Regarding the employment statements, Defendants would likely argue that Co-Lead Plaintiffs could not prove the employment statements artificially deflated Mindbody's stock because no such conversations actually took place and, even if they did, there would be no evidence that the statements had any impact on Mindbody's stock price given that the stock price hardly moved on the days when the statements were made.  If such arguments were accepted by the Court or a jury, in whole or part, they would have dramatically limited any potential recovery.

Co-Lead Plaintiffs alleged damages based on the difference between the fair value of Mindbody's common stock and the price received by class members upon selling.  The ultimate matter of proving the fair value of Mindbody's stock would have been a highly contested issue for the fact finder at trial, with the Parties putting forth widely diverging and complex expert evidence.

Although a comprehensive appraisal has not been completed given the stage of the litigation, Lead Counsel, with the assistance of Co-Lead Plaintiffs' experts, has estimated classwide damages of approximately $453 million,[7] if liability were established with respect to all of the allegedly false statements/omissions alleged in the SAC.  However, if Co-Lead Plaintiffs

---

[7] This figure is calculated using an estimated fair value of $41.25 to $49.50 per share (based on the price Co-Lead Plaintiffs allege Vista implied it was willing to pay when it offered to pay a "substantial premium" to Mindbody's trading range on October 16, 2016, SAC ¶116), an estimate of approximately 38 million shares sold during the pled class period, and a volume-weighted average sale price of $33.41 per share.  The midpoint of the resulting range is $453 million.

only prevailed on the claims alleging that Mindbody's fourth quarter guidance was false and misleading, estimated classwide damages would decrease to approximately $299 million.[8] Additionally, if Co-Lead Plaintiffs only prevailed on the claims alleging Defendants failed to disclose Mindbody's fourth quarter 2018 results, estimated classwide damages would decrease to approximately $133 million.[9]  Here, the lower end of the damages range was a real possibility given, among other reasons: (i) these damage estimates are premised on proving Mindbody's fair value was in the range of $41.25 to $49.50 per share, but a reasonable fact finder could have determined that the fair value was lower; and (ii) as the Court expressed during the September 9, 2021 status conference, there was a substantial risk that Co-Lead Plaintiffs would fail to recover on the claim that the 4Q18 guidance was actionable and materially misleading or fraudulent, and if this claim was dismissed at summary judgment or not proven at trial, estimated damages would be reduced to the lower end of the range – *i.e.*, $133 million figure.[10]

Accordingly, the Settlement recovers between approximately 2.2% of the upper end of the damages range, and 7.3% of damages for the omitted results claims.  These percentages of recovery are within the range of settlements that have received approval within the Second Circuit.  *See, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007)

---

[8] This figure is calculated using an estimated fair value of $41.25 to $49.50 per share, an estimate of approximately 22 million shares sold during the pled class period, and a volume-weighted average sale price of $31.13 per share.  The midpoint of the resulting range is $299 million.

[9] This figure is calculated using an estimated fair value of $41.25 to $49.50 per share, an estimate of approximately 16 million shares sold during the pled class period at a volume-weighted average sale price of $36.53 per share.  The midpoint of the resulting range is $133 million.

[10] *See, e.g.,* Hearing Trans. Sept. 9, 2019 at 6, Villegas Decl. Ex. 3 ("Well, I mean, again, I let you amend the complaint but it was barely -- and I let you amend it because I felt like there were fact questions that could only be resolved at summary judgment. But that does not mean that you should think that all of a sudden this case has become a lot more valuable because I am not at all convinced that's [ ] going to work.").

(approving settlement that was "between approximately 3% and 7% of estimated damages"). The level of recovery is also comparable to recoveries in securities class action settlements as a whole. As reported by NERA Economic Consulting, based on NERA's assessments of aggregate damages in the cases surveyed, from 2012 to 2021, the median settlement percentage of recovery in securities class actions with damages estimated between $100 million and $599 million ranged from 1.6% to 2.8%. *See* McIntosh J. & Starykh S., *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 23, Figure 21 (NERA 2022), Villegas Decl., Ex. 4. Moreover, the $9.75 million recovery is above the median settlement amount of $8 million in 2021 for securities class actions. *See* Villegas Decl., Ex. 4 at 20, Figure 20. Thus, compared to other similarly situated cases, the Settlement is a favorable outcome for the Settlement Class.

### 2. The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶24. Co-Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶30(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶40) and the claims process is completed, Authorized Claimants will be issued payments.  If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses).  Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  At this point, if there are unclaimed funds, such funds shall be contributed to a private, non-profit, non-sectarian 501(c)(3) organization designed by Co-Lead Plaintiffs and approved by the Court.  *Id*. at ¶27.

### 3.    The Settlement Does Not Excessively Compensate Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses.  The Settlement does not contemplate any specific award.  Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants.  In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek no more than 30% of the Settlement Fund, an amount that is within the percentages that courts in the Second Circuit have approved in class actions with comparable recoveries.  *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.,* No. 18-cv-6716, 2022 WL 198491, at *22 (E.D.N.Y. Jan. 21, 2022) (awarding 33% of $9 million settlement); *City of Austin Police Ret. Sys. v. Kinross Gold Corp*., No. 12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 19, 2015) (awarding 30% of $33 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig*., 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *Vaccaro v. New Source Energy Partners L.P.,* No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding 33.33% of $2.85 million settlement).

Exhibit 5 to the Villegas Declaration is a preliminary table showing the time, to date, that Lead Counsel has dedicated to pursuing the Action, together with each time-keeper's hourly rate for 2021 and associated lodestar.[11]   Lead Counsel will also seek payment of Litigation Expenses incurred during the prosecution of the Action of no more than $800,000.

       **E.**      **Rule 23(e)(2)(D): Class Members Are Treated**
                 **Equitably Relative to One Another**

The Settlement does not improperly grant preferential treatment to either the Co-Lead Plaintiffs or any segment of the Settlement Class.  Rather, all members of the Settlement Class, including Co-Lead Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[12]   The proposed Plan of Allocation, which is set forth in the Notice at pages 21 to 26, *see* Stipulation, Exhibit A-1, was prepared by Lead Counsel with the assistance of Co-Lead Plaintiffs' damages expert and is consistent with Co-Lead Plaintiffs' theories of damages in the case.  All class members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan.  Notice at ¶¶56-57.  *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

---

[11] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

[12] Co-Lead Plaintiffs may seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

## II.     PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

Co-Lead Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of the Settlement only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties, is "all persons and entities who or which sold shares of the publicly traded Class A common stock of Mindbody, Inc. (Ticker: MB) during the period from November 6, 2018 through February 15, 2019, inclusive, and were allegedly damaged thereby."[13] *See* Stipulation at ¶1(hh).  (The proposed Class Period ends on February 15, 2019, rather than February 14, 2019 as set forth in the SAC, in order to provide Defendants with a complete release of the alleged claims, given that the class period alleged in the initial complaint filed in the Action ended on February 15, 2019.  *See* ECF No. 1).[14]

In the interest of brevity, the Court is respectfully referred to Co-Lead Plaintiffs' previously filed motion for class certification for a complete recitation of the arguments supporting class certification.  *See* ECF Nos. 105-107; Villegas Decl. Exs. 6 & 7.  In summary, pursuant to Rule 23(a): (i) the Settlement Class is so numerous that joinder of all members would be impracticable (ECF No. 106 at 8); (ii) there are questions of law or fact common to the Settlement Class (*id*. at 9-10); (iii) the claims or defenses of Co-Lead Plaintiffs are typical of the claims or defenses of the

---

[13] Excluded from the Settlement Class are:  (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) any person who was an officer or director of Mindbody during the Class Period; (iv) any firm or entity in which any Defendant has or had a controlling interest; (v) parents, affiliates, or subsidiaries of Mindbody; and (vi) the legal representatives, agents, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such.  Also excluded from the Settlement Class will be any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

[14] Of note, as set forth in the Stipulation, claims being litigated in the Luxor Action, which involves breach of fiduciary duty and appraisal claims by those who tendered on February 15, 2019, are not released as part of the Settlement.  *See* Stipulation ¶1(dd).

Settlement Class (*id*. at 10-11); and (iv) Co-Lead Plaintiffs and Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 11-12).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate, given the presumptions of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) or *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) (ECF No. 106 at 13-21); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims (*id*. at 21-24).

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes. "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.,* 283 F.R.D. 178, 186 (S.D.N.Y. 2012). For the foregoing reasons, Co-Lead Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

## III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members

of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.* 396 F.3d at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedures for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion). The Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the names, telephone numbers, and addresses of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed notice program uses the "gold standard" method in securities cases for notifying class members: individual notice by mail, publication in *The Wall Street Journal*, a national newspaper focusing on investors, and dissemination over the internet using a wire service. To the extent email addresses are provided to the Claims Administrator, the Notice will also be emailed.  Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Claim Form to Settlement Class Members who can be identified and located, using information provided by Mindbody's transfer agent, as well as information provided by banks,

brokers, and other nominees about their customers who may have eligible sales.[15]  The Notice and Claim Form will be available on the Claims Administrator's website and Lead Counsel's website. Claim forms can be submitted to the Claims Administrator by mail or online using a claim portal.

Co-Lead Plaintiffs also request that the Court appoint SCS as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement.  SCS is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. *See* Villegas Decl. Ex. 8; *see also* www.strategicclaims.net.  SCS was chosen after a competitive bidding process.  Its fees and expenses, payable from the Settlement Fund, will be based primarily on the number of notices mailed and claims processed.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Co-Lead Plaintiffs respectfully propose the following schedule for Settlement-related events.  The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Co-Lead Plaintiffs request be approximately 100 days from entry of the Preliminary Approval Order.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (the "Notice Date") | *No later than 10 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of | *No later than 35 calendar days before the Settlement Hearing.* |

---

[15] Because of the availability of name and address data for potential class members from third-parties, and the Claims Administrator's ability to reach class members through individual mailed notice, Lead Counsel and the Claims Administrator have conferred and determined that using social media outreach would not be necessary here.

| Allocation, and Lead Counsel's application for attorneys' fees and expenses | |
|---|---|
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *Five calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 100 days from entry of the Preliminary Approval Order.  The hearing can be held either in-person or remotely, in the discretion of the Court.  Any scheduling updates will be posted on the Claims Administrator's website and Lead Counsel's website.* |

## CONCLUSION

For the foregoing reasons, Co-Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Strategic Claims Services as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

Dated: March 3, 2022

Respectfully submitted,

**LABATON SUCHAROW LLP**

 */s/ Carol C. Villegas*
Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
Charles Farrell
140 Broadway

New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: cvillegas@labaton.com
       dschwartz@labaton.com
       jbissell-linsk@labaton.com
       cfarrell@labaton.com

*Counsel for Walleye Trading LLC and*
*Walleye Opportunities Master Fund Ltd.*
*and the Proposed Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/ *Carol C. Villegas*
CAROL C. VILLEGAS