**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE MINDBODY, INC. SECURITIES LITIGATION | Civil Action No. 1:19-cv-08331-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND PAYMENT OF EXPENSES**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................4

I.      THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE
        PERCENTAGE OR LODESTAR METHOD ....................................................................4

        A.      The Requested Attorneys' Fee Would Be Reasonable Under the
                Percentage-of-the-Fund Method ..........................................................................4

        B.      Fees Awarded in Comparable Cases Within this District.......................................5

        C.      The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar
                Method ................................................................................................................6

II.     THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
        THE SECOND CIRCUIT'S FACTORS ...........................................................................9

        A.      Lead Counsel Has Devoted Significant Time and Labor to the Action .................9

        B.      The Magnitude and Complexity of the Action Support the Requested Fee .........10

        C.      The Risks of the Litigation Support the Requested Fee .......................................11

        D.      The Quality of Lead Counsel's Representation Supports the Requested
                Fee.....................................................................................................................12

        E.      The Requested Fee in Relation to the Settlement ...............................................15

        F.      Public Policy Considerations Support the Requested Fee ...................................15

III.    THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
        REQUESTED FEE .......................................................................................................15

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................16

V.      REIMBURSEMENT TO CO-LEAD PLAINTIFFS PURSUANT TO 15 U.S.C.
        §78u-4(a)(4) .................................................................................................................19

CONCLUSION........................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
  MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
  *aff'd*, 272 F. App'x. 9 (2d Cir. 2008) ..................................................................................14

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................................11

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014) ..................................................................................................20

*In re Bayer AG Sec. Litig.*,
  No. 03-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ..................................................12

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) .....................................................................................7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................................4

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ......................................................................................6

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
  No. 11-CV-0984, 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ......................................5, 6

*City of Providence v. Aeropostale Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..............................................................4, 10, 11

*City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
  No. 20-cv-02031, 2021 WL 2736135 (S.D.N.Y. June 30, 2021) ...........................................20

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014) ....................................................................................7, 8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..................................8, 11, 15

*In re Deutsche Telekom, AG Sec. Litig.*
  No. 00-cv-9475, 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...............................................8

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................8, 12, 15

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543, 2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020) ..........................................18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...............................................................................................6

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................................12

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).............................................................................................4, 9, 10

*Guevoura Fund Ltd.. v. Sillerman*,
No. 15 cv 7192, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)..............................................11

*Hayes v. Harmony Gold Mining Co. Ltd.*,
No. 08 Civ. 03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)
*aff'd*, 509 F. App'x. 21 (2d Cir. 2013).........................................................................................5

*Hicks v. Stanley*,
No. 01-CIV-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).........................5, 14, 15, 19

*Maley v. Del Global Tech. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2008)......................................................................................15

*In re Marsh & McLennan Inc. Sec. Litig.*,
No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .............................................7, 20

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................................................14

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
No. 02 MD 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................14

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .................................5

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x. 760 (2d Cir. 2020) .............................................................................................14

*In re Petrobras Sec. Litig.*,
317 F. Supp. 3d 858 (S.D.N.Y. 2018).......................................................................................20

*In re PPDAI Grp. Inc. Sec. Litig.*,
No. 18-cv-6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)...................................................5

*In re Qudian Inc. Sec. Litig.*,
No. 17-cv-09741, 2021 WL 2328437 (S.D.N.Y. June 8, 2021) .........................................5, 20

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)...................................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 16 cv 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................10, 11

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 05-720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008)...........................................5

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................5, 7

*In re Veeco Instruments Inc. Sec. Litig.*,
    MDL No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)....................................12, 14

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    No. 15-cv-1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018)..............................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................4, 6, 7

**Docketed Cases**

*Ark. Tchr. Ret. Sys. v. Bankrate*,
    No. 13-cv-7183, slip op. (S.D.N.Y Nov. 25, 2014) ...................................................7

*Cornwell v. Credit Suisse Grp.*,
    No. 08-cv-03758 (VM), slip op. (S.D.N.Y. July 20, 2011) ...........................................8

*In re LaBranche Sec. Litig.*,
    No. 03-CV-8201, slip op. (S.D.N.Y. Jan. 22, 2009)...................................................6

*Patel v. L-3 Commc'ns Holdings, Inc.*,
    No. 14-cv-06038, slip op. (S.D.N.Y. Aug. 17, 2017) ...............................................20

*In re Silvercorp Metals Inc. Sec. Litig.*,
    No. 12-cv-09456-JSR, slip op. (S.D.N.Y. Feb. 13, 2015) ..........................................20

*Stein v. Eagle Bancorp, Inc., et al.*,
    Case No. 1:19-cv-06873-LGS, slip op. (S.D.N.Y. Feb 10, 2022) ..................................20

*In re TeleTech Litig.*,
    No. 1:08-cv-00913, slip op. (S.D.N.Y. June 11, 2010) .............................................5

**Statutes**

15 U.S.C. §78u-4(a)(4) ...............................................................................19

Court-appointed Lead Counsel, Labaton Sucharow LLP ("Labaton Sucharow"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 30% of the Settlement Fund. Lead Counsel also seeks payment of $560,715.36 in Litigation Expenses that Lead Counsel reasonably incurred in prosecuting the Action, as well as $8,000 in reimbursement to Co-Lead Plaintiffs Walleye Trading LLC and Walleye Opportunities Master Fund Ltd. ("Co-Lead Plaintiffs"), directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for a $9,750,000 cash payment pursuant to the terms of the Stipulation. The Settlement brings this Action to a close with a very favorable result, after more than two years of intense litigation, including motion practice, fact and expert discovery, litigation in the Delaware Court of Chancery, and robust arm's-length negotiations under the auspices of a highly experienced mediator. The Settlement will provide meaningful compensation to the Settlement Class while avoiding the delay and significant risks of continued litigation.

---

[1] Lead Counsel is simultaneously submitting the Declaration of Carol C. Villegas in Support of Co-Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses (the "Villegas Declaration") (cited herein as "¶"). Capitalized terms have the meanings ascribed to them in the Villegas Declaration or the Stipulation and Agreement of Settlement (ECF No. 118-1) (the "Stipulation").

All exhibits referenced below are attached to the Villegas Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Villegas Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

The benefits of the Settlement are clear when weighed against the risk that the Settlement Class might recover less (or nothing) if litigation continued. Defendants had substantial defenses to liability. While Co-Lead Plaintiffs believe they had compelling counterarguments, there was a substantial risk, for example, that Defendants' upcoming response to Co-Lead Plaintiffs' motion for class certification might have swayed the Court in their favor, particularly with respect to reliance. This is in addition to Defendants' anticipated arguments at summary judgment with respect to Co-Lead Plaintiffs' evidence of falsity and scienter. In addition to challenges with respect to reliance, falsity, and scienter, Co-Lead Plaintiffs faced ongoing hurdles with respect to proving loss causation and damages. Finally, even if Co-Lead Plaintiffs succeeded in establishing both Defendants' liability, loss causation, and damages at trial, Defendants undoubtedly would have pursued appeals, which would have further delayed and threatened any recovery. The Settlement eliminates these risks while providing a favorable recovery to the Settlement Class.

In the face of these challenges—as well as the fully contingent nature of the case—Lead Counsel devoted substantial resources to prosecuting this Action against well-regarded opposing counsel. Among the other work detailed in the Villegas Declaration, Lead Counsel: (i) conducted a wide-ranging investigation concerning the allegedly fraudulent misrepresentations and omissions; (ii) prepared and filed two detailed amended class action complaints; (iii) researched and drafted an opposition to Defendants' comprehensive motion to dismiss the Amended Complaint, after which the Court entered an Order partially granting and partially denying Defendants' motion; (iv) moved for class certification, which was accompanied by an expert report on market efficiency and an expert report on corporate valuation; (v) engaged in extensive and thorough fact discovery, including participating in the depositions of 17 fact witnesses (and

was preparing for the depositions of additional witnesses at the time the Parties settled), and analyzing more than 400,000 pages of documents produced by Defendants and third-parties; (vi) filed petitions in Delaware Court of Chancery challenging the confidential treatment of certain documents in the action *In re Mindbody Stockholder Litigation*, C.A. No. 2019-0442-KSJM (Del. Ch.) (the "*Luxor Action*"), and objecting to certain aspects of the proposed settlement of *Philip Ryan Jr. v. Mindbody, Inc.*, C.A. No. 2019-0061-KSJM (Del. Ch), a case seeking to invalidate the Merger (the *"225 Action"*), to the extent they would have impacted the Action; (vii) engaged in expert discovery, including retaining professionals with expertise in (a) market efficiency, loss causation, and damages and (b) corporate valuation and the software industry; and (viii) exchanged mediation submissions and participated in a full-day mediation session and ongoing negotiations under the auspices of experienced and highly respected mediator, Michelle Yoshida of Phillips ADR (the "Mediator").  *See* Villegas Declaration at §§ III-IV.  At the time the Settlement was reached, Lead Counsel had a well-founded and thorough understanding of the strengths and weaknesses of the Action.

Against this backdrop, Lead Counsel requests a fee of 30% of the Settlement Fund, which would represent a negative lodestar "multiplier" of approximately 0.90, *i.e.,* 90% of Lead Counsel's lodestar, payment of Lead Counsel's Litigation Expenses in the amount of $560,715.36, and a service award pursuant to the PSLRA of $8,000 to Co-Lead Plaintiffs for the time and resources they dedicated to representing the class.  As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class actions of this size, and the fee and expense requests are well supported by both case law and the facts of this case.  For the following reasons, Lead Counsel respectfully submits that its efforts and the results achieved in this Action justify the requested fees and expenses.

## ARGUMENT

**I.  THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD**

### A.  The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  The purpose of the common fund doctrine is to fairly and adequately compensate counsel for their creation of the fund and to ensure that all class members contribute equally towards the costs associated with litigation on their behalf.  *See Id.* at 47.

Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature."  *City of Providence v. Aeropostale Inc.*, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014).

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases.  *See Goldberger,* 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (finding that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation");

*Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[2]

### B.   Fees Awarded in Comparable Cases Within this District

The 30% fee requested by Lead Counsel is in the range of percentage fees awarded within the Second Circuit in comparable class action cases. *See, e.g., Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *see also Hicks v. Stanley*, No. 01-CIV-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.,* No. 18-cv-6716, 2022 WL 198491, at *22 (E.D.N.Y. Jan. 21, 2022) (awarding 33% of $9 million settlement); *Hayes v. Harmony Gold Mining Co. Ltd.,* No. 08 Civ. 03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) *aff'd*, 509 F. App'x. 21 (2d Cir. 2013) (approving 33% of $9 million settlement); *In re Qudian Inc. Sec. Litig.*, No. 17-cv-09741, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding 33 1/3% of $8.5 million); *In re TeleTech Litig.*, No. 1:08-cv-00913, slip op. at 1 (S.D.N.Y. June 11, 2010) (awarding 30% of $11 million settlement) (Ex. 8);[3] *In re China*

---

[2] All internal quotations and citations are omitted unless otherwise stated.

[3] All unreported slip opinions are submitted in a compendium. *See* Ex. 8.

*MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0984, 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding 33.33% of $12 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *In re LaBranche Sec. Litig.*, No. 03-CV-8201, slip op. at 1 (S.D.N.Y. Jan. 22, 2009) (awarding 30% of $13 million settlement) (Ex. 8).

Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2012-2021, the median attorneys' fee award for settlements of between $5 million and $10 million was 30%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA 2022), Ex. 6 at 27.

## C. The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal–Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Lead Counsel spent more than 6,500 hours of attorney and other professional staff time litigating and settling the case from inception through September 2022. *See* Ex. 4-A. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other

professional by their 2021 hourly rates, is $3,254,648.50. *Id.*[4]  The hourly rates of Lead Counsel here range from $800 to $1,150 for partners, $500 to $800 for of counsels, $400 to $550 for associates, $335 to $435 for staff attorneys, and $355 to $375 for paralegals. *See* Ex. 4-A. "[P]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Telik*, 576 F. Supp.2d at 589.  Defense firm rates gathered and analyzed by Labaton Sucharow from bankruptcy court filings nationwide in 2021 in many cases exceeded these rates. *See* Villegas Decl. at ¶144; Ex. 5.

The requested fee of 30% of the Settlement Fund, *i.e.,* $2,925,000, therefore represents a *negative* fractional multiplier of 0.90 (90%) of the total lodestar.  A 0.90 "multiplier" is below the parameters used throughout district courts in the Second Circuit and is additional evidence that the requested fee is reasonable.  *See*, *e.g.*, *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with a negative multiplier and noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); *In re Marsh & McLennan Inc. Sec. Litig.*, No. 04-8144, 2009  WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) (reasoning that where the multiplier is negative, the lodestar cross-check "unquestionably supports the requested percentage fee award."). Within the Second Circuit, lodestar multiples greater than 1.5 are regularly awarded.  *See, e.g., Walmart Stores Inc. v. Visa USA Inc.*, 396 F. 3d 96, 123 (2d Cir. 2005) (upholding a multiplier of 3.5 as reasonable on appeal); *Ark. Tchr. Ret. Sys. v. Bankrate*, No. 13-cv-7183, slip op. at 2 (S.D.N.Y Nov. 25, 2014) Ex. 8 (awarding 1.8 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d

---

[4] Although courts regularly approve the use of current rates in class action fee applications, Lead Counsel is using its 2021 rates given that the agreement in principle to settle

344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2); *In re Deutsche Telekom, AG Sec. Litig*. No. 00-cv-9475, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 25% of $120 million settlement; a 3.96 multiplier); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), slip op. at 4 (S.D.N.Y. July 20, 2011) (awarding fee equal to a 4.7 multiplier) (Ex. 8).

Fees representing multiples above a lodestar are awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").

Here, Lead Counsel carefully and efficiently staffed the Action from the beginning, and litigated the case with just one main partner, Carol Villegas. Other partners were involved, but only at particular stages of the case, such as lead plaintiff appointment or settlement, consistent with their areas of expertise. Villegas Decl. ¶143; Ex. 4-A. The result of this staffing by Lead Counsel was that associates and of counsel with lower hourly rates handled the case on a day-to-day basis, as opposed to more expensive partners. Additionally, the document review attorneys assisting Lead Counsel on this matter are skilled attorneys who made meaningful, substantive contributions, beyond solely conducting document review, including preparing deposition and mediation materials. ¶¶58-61.

---

was reached in 2021.

Additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms. However, Lead Counsel will not seek payment for this additional work.

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

In sum, Lead Counsel's requested fee award is reasonable whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## II.  THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that the requested fee would be reasonable.

### A.  Lead Counsel Has Devoted Significant Time and Labor to the Action

The substantial time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Villegas Declaration, Lead Counsel, among other things:

- conducted a comprehensive investigation of the claims against Mindbody and the other Defendants, including conducting interviews with 25 former Mindbody employees (¶¶16-18);

- researched and drafted a detailed Amended Complaint (*Id.*);

- successfully opposed, in part, Defendants' motion to dismiss (¶¶19-30);

- engaged in rigorous fact and expert discovery, which included the analysis of more 400,000 pages of documents produced by Defendants and third-parties; consultation with experts in the fields of damages and market efficiency, corporate valuation, and software companies; participated in the depositions of 17 fact witnesses, and preparing for several more (§IV);

- filed a second amended complaint ("SAC");

- filed petitions in Delaware Court of Chancery challenging the confidential treatment of certain documents in the *Luxor Action*, a class action and appraisal proceeding challenging the acquisition of Mindbody by Vista Equity Partners, resulting in a partial unsealing of documents relevant to the claims in the Action, and objected to the proposed settlement of the *225 Action*, as overly broad to the extent it would impact the class and claims in the Action without providing any consideration.

- moved for class certification (¶¶42-46) and filed two expert reports in connection with the class certification motion; and

- engaged in extensive settlement negotiations with Defendants' Counsel, including the exchange of mediation submissions, a full-day mediation session, and additional negotiations (¶¶47-50).

As noted above and discussed in the Villegas Declaration, Lead Counsel expended more than 6,500 hours prosecuting this Action with a lodestar value of $3,254,648.50. *See* Ex. 4-A.  At all times, Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

## B.    The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the fee request.   Courts regularly recognize that securities class action litigation is "notably difficult and notoriously uncertain."  *City of Providence,* 2014 WL 1883494, at *5; *In re Signet Jewelers Ltd. Sec. Litig.,* No. 16 cv 06728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("securities class actions

are generally complex and expensive to prosecute"); *Guevoura Fund Ltd.. v. Sillerman*, No. 15 cv 7192, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) ("Securities class actions are notoriously complex."). This case was no different.

As detailed in the Villegas Declaration, this Action raised particularly thorny questions concerning—among other things—damages, loss causation, falsity, scienter, and materiality within the scope of Mindbody's business and a merger, as well as issues related to class certification, such as whether the fraud on the market presumption of reliance could be applied in this case. Prosecuting the Settlement Class's claims required expertise, skill and dedication, including extensive expert analysis across multiple fields. Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable. *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### C.   The Risks of the Litigation Support the Requested Fee

The risks associated with this contingency fee case also support the requested fee. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5; *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee.").

The fact that Co-Lead Plaintiffs overcame, in part, Defendants' motion to dismiss did not guarantee ultimate victory. Co-Lead Plaintiffs of course faced the substantial burdens of prevailing at class certification, summary judgment, *Daubert* motions, trial, and likely appeals – a process that could extend for years and might lead to a smaller recovery, or no recovery at all. While Co-Lead Plaintiffs remain confident in their ability to prove their claims and to effectively rebut Defendants' defenses, many unresolved issues remained in connection with certifying the

class and proving falsity, materiality, scienter, and loss causation.  The contours of the ultimate class and actionable misstatements could also have compromised Co-Lead Plaintiffs' ability to succeed at trial and obtain a larger judgment for the class.  *See In re Bayer AG Sec. Litig.*, No. 03-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting the "difficulty of establishing loss causation [] and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards.").

The Parties were deeply divided on virtually every issue in the litigation, as detailed in the Villegas Declaration, and there was no guarantee Co-Lead Plaintiffs' positions would prevail. If Defendants had succeeded on any of their defenses, Co-Lead Plaintiffs and the class would have recovered nothing or far less than the Settlement Amount.

In the face of many uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation would require the devotion of substantial time and expense with no guarantee of compensation.  ¶¶132-40.  Lead Counsel's assumption of this contingency fee risk strongly supports the requested fee.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

D.     **The Quality of Lead Counsel's Representation Supports the Requested Fee**

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  Lead Counsel respectfully submits that the quality of its representation is best evidenced by the progress of the litigation and the quality of the result achieved.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, MDL No. 05-1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  Furthermore, Lead Counsel is a nationally recognized leader

in the field of securities class action litigation and has substantial experience litigating and trying securities class actions in courts throughout the country.  ¶47; Ex. 4-D.  The attorneys who were principally responsible for prosecuting this case relied upon their skill to develop and implement sophisticated strategies to overcome myriad obstacles raised by Defendants throughout the litigation.

The result obtained for the Settlement Class in this case is very favorable, particularly when viewed in light of the serious risks of continued litigation.  If Co-Lead Plaintiffs were able to prevail in all of their arguments, and with every assumption resolved in the class's favor, the Settlement represents a recovery of approximately 2.2% of the class's *maximum* recoverable damages, which are estimated to be approximately $453 million.  ¶¶5-6.  However, as explained in the Villegas Declaration, if Co-Lead Plaintiffs only prevailed on the claims alleging that Mindbody's 4Q18 guidance was false and misleading, estimated classwide damages would decrease to approximately $299 million. ¶¶94-96.   Additionally, if Co-Lead Plaintiffs only prevailed on the claims alleging Defendants failed to disclose Mindbody's 4Q18 results, estimated classwide damages would decrease to approximately $133 million. The Settlement represents a recovery of approximately 7.3% of these damages.  Here, the lower end of the damages range was a real possibility given, among other reasons: (i) these damage estimates are premised on proving Mindbody's fair value was in the range of $41.25 to $49.50 per share, but a reasonable fact finder could have determined that the fair value was lower; and (ii) as the Court expressed during the September 9, 2021 status conference, there was a substantial risk that Co-Lead Plaintiffs would fail to recover on the claim that the 4Q18 guidance was actionable and materially misleading or fraudulent, reducing damages to the lower end of the range – *i.e.,* $133 million figure. *Id*.

Since the passage of the PSLRA, courts have regularly approved settlements with recoveries in this range. *See, e.g.*, *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages [and] within the range of reasonableness for recovery in the settlement of large securities class actions"); *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, No. 02 MD 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving $40.3 million settlement representing approximately 6.25% of estimated damages and noting this was at the "higher end of the range of reasonableness of recovery in class actions securities litigations"); *Hicks,* 2005 WL 2757792, at *7 (approving $10 million settlement representing 3.8% of estimated damages); *see also In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of $6.5 million settlement representing 6.1% of the class's maximum potentially recoverable damages).

The quality of Lead Counsel's representation is further demonstrated by the fact that this substantial recovery was obtained after opposing two years of an intense and aggressive defense by well regarded attorneys at Kirkland & Ellis LLP and Cooley LLP. Courts recognize that the strength of Lead Counsel's opposition should be considered in assessing its performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% fee award was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

### E.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3.  As discussed in detail in Section I, *supra*, the requested fee is within the range of percentage fees that this Court has awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

### F.    Public Policy Considerations Support the Requested Fee

A strong public policy favors rewarding firms for bringing successful securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2008) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").  This factor supports Lead Counsel's fee and expense application.

## III.    THE REACTION OF THE SETTLEMENT CLASS TO DATE
## SUPPORTS THE REQUESTED FEE

The reaction of the Settlement Class to date also supports the fee request.  First, through September 30, 2022, the Claims Administrator has mailed 22,387 copies of the Notice to potential Settlement Class Members and nominees informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund and up to $800,000 in Litigation Expenses. *See* Declaration

of Josephine Bravata Concerning (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date (the "Mailing Declaration" or "Mailing Decl."), dated September 30, 2022, Ex. 3 at ¶8 and Ex. A thereto.  While the time to object to the Fee and Expense Application does not expire until October 14, 2022, to date no objections have been received.  Lead Counsel will address any that are submitted in its reply papers, which will be filed on or before October 20, 2022. Additionally, the requested fee of 30% is made with the full support of the Co-Lead Plaintiffs. *See* Declaration of Andrew Carney on Behalf of Co-Lead Plaintiffs, dated September 26, 2022, submitted herewith as Ex. 1, at ¶¶6-7.

* * *

For all the foregoing reasons, it is respectfully submitted that an award of a 30% attorneys' fee to Lead Counsel under the circumstances before the Court would be fair and reasonable.

## IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for payment of its Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action.  As detailed in the Villegas Declaration, Lead Counsel incurred $560,715.36 in Litigation Expenses.  *See* Ex. 4-C. This amount is below the $800,000 cap that the Notice informed potential Settlement Class Members counsel may apply for, and which—to date—there has been no objection to.

The amount of Litigation Expenses is consistent with the stage of the litigation.  Lead Counsel has incurred considerable expenses related to, among other things, expert fees, deposition reporting and transcripts, document hosting, and mediation fees.  A complete

breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit 4 - C to the Villegas Declaration.

One of the largest expenses relates to the retention of Co-Lead Plaintiffs' testifying experts. These fees total $140,661.25, or approximately 25% of the total Litigation Expenses. Villegas Decl. ¶151; Ex. 4-C.  Principally, Lead Counsel retained a market efficiency/loss causation/and damages expert, Chad Coffman, of Global Economics Group, who contributed to the prosecution of this Action by, among other things, preparing an expert report concerning market efficiency in connection with Co-Lead Plaintiffs' motion for class certification; analyzing loss causation and damages issues, including in connection with the Parties' mediation; and assisting with the development of the proposed Plan of Allocation. Lead Counsel retained Benjamin Sacks, a leading expert on corporate valuation at the Brattle Group, to opine on the subject of valuation in connection with Co-Lead Plaintiffs' class certification motion. Additionally, Lead Counsel also retained an expert, Edward Mallen, to opine on issues related to Mindbody's performance within the context of the Software as a Service industry. *Id.*

Costs related to discovery comprise a sizable amount of the litigation expenses, totaling $359,121.73, or approximately 64% of all expenses. Ex. 4-C. These costs include $59,121.73 in court reporting fees related to the 19 depositions taken by the Parties (*id*. ¶6(g)), as well as $300,000.00 in litigation support e-discovery vendor fees incurred to forensically gather Co-Lead Plaintiffs' documents and data and to host and review the electronic documents produced in this litigation by Defendants, third parties, and Co-Lead Plaintiffs (*id*. ¶6(f)).  The expenses also include $33,265.48 in professional fees paid to counsel for five potential witnesses in the case, who were former employees of Mindbody or sub-advisors for the Co-Lead Plaintiffs.  These

witnesses were subpoenaed by Defendants and asked to produce documents and appear for depositions. *Id*. ¶6(e).

The other requested expenses are typical of those incurred in complex securities class actions: mediation fees ($9,140.00); duplicating costs ($2,641.40); PSLRA notice costs in connection with lead plaintiff motions ($513.00), filing and service fees ($11,570.25); travel costs ($408.42); and fees associated with factual and financial electronic research ($3,010.63).[5]

It is respectfully submitted that such expenses are properly recoverable by counsel. "In class action settlements, [a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients. When the 'lion's share' of expenses reflects the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests*." In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15-cv-1249, 2018 WL 6333657, at *5 (S.D.N.Y. Dec. 4, 2018)(approving $898,497.96 in litigation expenses, including over $340,000 for experts and $336,000 for litigation support); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2020 WL 7481292, at *2 (S.D.N.Y. Dec. 18, 2020) (finding the expense request reasonable for fees paid to experts, mediation fees, computerized research, document production and storage, and travel, among others, and noting that "[c]ourts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses").

---

[5] Given the Court's practices, we have not included costs related to legal research conducted using Westlaw or Lexis/Nexis, which totaled approximately $23,000. The expenses sought were incurred for the use of specialized financial and investigative databases, as well as court filing services like Pacer. *See* Ex. 4 ¶6(j).

Overall, the expenses sought are the types of expenses that are necessarily incurred in complex litigation and charged to clients who pay by the hour.

## V.     REIMBURSEMENT TO CO-LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Here, as described in Co-Lead Plaintiffs' declaration, since their appointment, they have been committed to pursuing the class's claims—and have taken an active role in so doing.  Courts "award such costs and expenses to both reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks*, 2005 WL 2757792, at *10.

Co-Lead Plaintiffs actively and effectively fulfilled their obligations as representatives of the class, complying with all of the demands placed upon them during the litigation and settlement of the Action. Co-Lead Plaintiffs, through the principals at Walleye Capital:[6] (i) regularly communicated with Lead Counsel regarding the posture and progress of the Action; (ii) reviewed pleadings and motions filed in the Action; (iii) coordinated Co-Lead Plaintiffs' production of documents and written discovery responses to Defendants; and (iv) discussed mediation strategy and evaluated settlement proposals. *See* Ex. 1 at ¶¶3-4, 9.  These efforts required representatives of Co-Lead Plaintiffs to dedicate time and resources to the Action that they would have otherwise devoted to their regular duties.  Co-Lead Plaintiffs seek $8,000 in

---

[6] Co-Lead Plaintiffs, Walley Trading LLC and Walleye Opportunities Master Fund Ltd. are managed by Walleye Capital LLC ("Walleye Capital").

connection with the 20 hours they dedicated to the litigation over the course of two years, at a reduced effective hourly rate of $400. *See* Ex. 1 at ¶¶8-10.

Numerous courts within this District have approved payments to compensate representative plaintiffs under similar circumstances. *See, e.g., Stein v. Eagle Bancorp, Inc., et al.,* Case No. 1:19-cv-06873-LGS, slip op. at 3(S.D.N.Y. Feb 10, 2022) (awarding individual lead plaintiff $7,500) (Ex. 8); *In re Qudian Inc. Sec. Litig.,* 2021 WL 2328437, at *2 (awarding individual lead plaintiff $12,500); *City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent.*, *Inc.,* No. 20-cv-02031, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.40 to lead plaintiff pension fund); *Patel v. L-3 Commc'ns Holdings, Inc.,* No. 14-cv-06038, slip op. (S.D.N.Y. Aug. 17, 2017) (awarding pension fund lead plaintiffs their requested payments of $390, $860, and $1000, respectively, for time spent directly related to their representation of the class) (Ex. 8); *In re Silvercorp Metals Inc. Sec. Litig.,* No. 12-cv-09456-JSR, slip op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding two individual lead plaintiffs $12,500 each) (Ex. 8); *In re Petrobras Sec. Litig*., 317 F. Supp. 3d 858, 879 (S.D.N.Y. 2018) (awarding university pension plan and state pension plan lead plaintiffs $300,000, $50,000, and $50,000); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig*., 772 F.3d 125, 132-134 (2d Cir. 2014) (affirming award of more than $450,000 to representative plaintiffs for time spent by their employees); *Marsh & McLennan,* 2009 WL 5178546, at *21 (awarding a combined $214,657 to two state pension fund lead plaintiffs).

## **CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Settlement Fund, which includes accrued interest; $560,715.36 in Litigation Expenses incurred by Lead Counsel; and $8,000 to Co-Lead Plaintiffs

pursuant to the PSLRA.  A proposed order will be submitted with Lead Counsel's reply papers, after the October 14, 2022 deadline for objecting has passed.

Dated: October 4, 2022                **LABATON SUCHAROW LLP**

*/s/ Carol C. Villegas*
Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: cvillegas@labaton.com
         dschwartz@labaton.com
         jbissell-linsk@labaton.com

*Counsel for Walleye Trading LLC and*
*Walleye Opportunities Master Fund Ltd.*
*and the Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

<u>/s/ <i>Carol C. Villegas</i></u>
CAROL C. VILLEGAS
