MARDMINC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

WALLEYE TRADING, LLC., ET AL,,

                 Plaintiff,

          v.                               19 Civ 08331

MINDBODY, INC., ET AL,,

                 Defendant.
                                           Settlement
------------------------------x
                                           New York, N.Y.
                                           October 27, 2022
                                           2:30 p.m.

Before:

                    HON. VALERIE E. CAPRONI,

                                           District Judge

                            APPEARANCES

JAKE E. BISSELL-LINSK
NICOLE M. ZEISS
     Attorneys for Plaintiff

MATTHEW SOLUM
JOHN DEL MONACO
JACOB RAE
SARAH LIGHTDALE
     Attorneys for Defendant

MARDMINC

(Case called; appearances noted)

THE COURT:  Okay.  Mr. Bissell, do you want to be heard?

MR. BISSELL-LINSK:  Yes, your Honor.

I'm happy to walk through why the proposed order should be approved, but also happy to start with answering questions.  However you'd like.

THE COURT:  Well, I had one question right off the bat.  Paragraph nine of the proposed final order and document provides that the Court finds that during the course of this action the parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

Is this some new requirement that I'm supposed to be making a Rule 11 determination?  I'm not suggesting that anybody violated Rule 11.

MS. ZEISS:  Your Honor, it is a requirement under the PSL array.

THE COURT:  That's where it is.  Okay.  Go ahead then.

MR. BISSELL-LINSK:  Thank you, your Honor.

Pleased to be here on behalf of Walleye Trading, LLC, and Walleye Opportunities Master Fund, and on behalf of the settlement class.  We're here for the final approval of the proposed 9.75 million dollar settlement that will resolve this class action litigation, approval of the proposed plan of

MARDMINC

allocation for the settlement proceeds to eligible claimants and approval of lead counsels' request for attorney fees and expenses.

We're pleased to report that there have been no objections to the settlement from any member of the settlement class.

THE COURT:  The settlement class should be thanking the sweet stars that they get what they get.

MR. BISSELL-LINSK:  Thank you, your Honor.

No objection to the proposed plan of allocation or request for attorney fees and expenses.  And there has only been one request for exclusion, and that's the request was invalid.  It lacked any information about the person's trading.

We have three proposed orders with the Court:  The final judgment, which we were just discussing; the fee and expense order; and the order approving the plan of allocation. To date, $22,387 notices were mailed and 5,151 claims have been received, which is a fair rate of return.

THE COURT:  Do you know what percentage that reflects?

MR. BISSELL-LINSK:  Yes.  That's 23 percent.

THE COURT:  That's 23 percent of the number of claim forms sent out.

MR. BISSELL-LINSK:  (Nodding)

THE COURT:  What percentage of the shares that were effected?

MARDMINC

MR. BISSELL-LINSK:  I guess I don't know have that --

THE COURT:  Is there a way to even calculate that?

MR. BISSELL-LINSK:  Yes.  I don't have the exact number of how many -- how many shares there would be, and that's partially a result of the structure of this class where the total volume of trading determines the class size.  And so it's a little uncertain how many people would be in the class.

THE COURT:  Okay.

MR. BISSELL-LINSK:  I believe the Court is familiar with the basic allegations here, but the case revolved around the merger or the privatization of Mindbody and false statements -- alleged false statements and omissions concerning the fourth quarter 2018 guidance, the employment discussions prior to the preliminary proxy, and the fourth quarter 2018 results.  And this settlement would resolve all of those claims.

The standards for approval of a settlement like this are set by Rule 23(e)(2).  In sum, the Court may approve a settlement that is fair, reasonable and adequate.  And the rules lay out several requirements for assessing that, and I'm happy to walk through those requirements.

In addition to the factors set out in the rules, there is a list of factors known as the *Grinnell* factors set by Second Circuit case law.  And I can also talk through those as I go.

MARDMINC

The settlement was reached by an adequate representative and is procedurally fair.  Plaintiffs and plaintiffs' counsel have adequately represented the settlement class.  Plaintiffs, like all members of the settlement class, sold shares of Mindbody stock during the class period when its value was depleted and sold shares for less than fair value based on the allegations in the complaint.  Plaintiffs were active and informed on litigation.

Among other things, the lead plaintiffs regularly communicated with counsel about the posture and progress of the case, discussed and reviewed the pleadings, motions, and evaluated the proposed settlement.

Plaintiffs had knowledgeable counsel who's qualified to understand a case of this sort and has represented parties in similar litigations.  The settlement was reached after arms length negotiation with the assistance of an experienced mediator, a factor that supports the settlement's reasonableness.

We mediated the case before Michelle Yoshida of Phillips, ADS, who's experienced in mediating securities cases.  There was a full day mediation session over Zoom, significant follow up afterwards, and ultimately the settle was a result of a mediator's proposal that all parties accepted.

The relief provided is adequate.  In fact, as your Honor mentioned, very favorable for the class.  The case

MARDMINC

involved a number of case risks, including complicated and intricate issues related to loss position, falsity, scienter and reliance.

THE COURT:  Other than that, you have a slam dunk case.

MR. BISSELL-LINSK:  We had filed our motion for class certification, and there are considerable difficulties in the class certification motion where we were expecting vigorous opposition from defendants.  We still had to overcome summary judgment, and perhaps our own summary judgment motions.  And then there was trial as well.

So when weighed against the years of potential litigation and uncertainty and potential appeals and risks in the case, the complexity of the case weighs in favor of the settlement.

In addition to those sort of merit issues, there's also the issue of damages in this case, which would be dependent on showing that the fair value of Mindbody stock was much higher than parties received.  That would have turned into an expensive and complicated battle of the experts and a settlement avoids that uncertainty and expense for the class.

The range of reasonableness for the settlement is good here and slightly complicated to analyze in light of the fact that damages depend on the expert analysis of the fair value of the shares.  But based on our sort of best attempt, at this

MARDMINC

stage, we think if we had prevailed in all claims, damages could have been in the range of $453 million, but if we had just prevailed on one of the core claims of the three that I mentioned earlier, damages would have only been 133 million, so looking at those numbers, damages would have been between -- or the settlement is between 2.2 and 7.3 percent of the total damages in the case, which is well within the range accepted as reasonable in courts for settlements like this.

It's also -- the 9.75 million dollar settlement amount is also reasonable compared to settlements commonly approved in securities class actions within this circuit.  Additionally, the settlement provides for -- it is effective -- it provides an effective means for distributing the settlement proceeds to class members.  We had a lengthy discussion about that in the preliminary approval hearing.

THE COURT:  I recall.

MR. BISSELL-LINSK:  I won't venture back into that unless your Honor has other questions.

The terms of the proposed award of attorneys fees is also reasonable, and I'll discuss that a bit later when talking about that request.  The relief is adequate considering all agreements in the settlement.  That's a factor that the rules look to that our -- the agreements here are -- the settlement agreement itself, as has been filed as well as one supplement agreement that has been filed with the court relating to the

MARDMINC

possibility of parties seeking exclusions, which is not seemingly being triggered here.

The remaining *Grinnell* factors also support approval. Here, one of those factors is defendant's ability to withstand a greater judgment. Here it's likely defendants could have withstood a greater judgment, but courts do not deem that element dispositive when the settlement is otherwise favorable. The reaction of the settlement class supports the settlement. As I mentioned before, the lead plaintiffs fully support the settlement. There have been no objections and no valid exclusions despite 22,000 notices being mailed out and a substantial amount of claimants being -- filing claims.

Another *Grinnell* factor looks at the stage of proceedings and the amount of information available to counsel. This was a well-informed settlement. We received over 400,000 pages of documents. We participated in 19 remote depositions of 17 different witnesses. We engaged three different experts, exchanged detailed mediation statements with the defendants, and fully discussed and vetted the issues in the case. There was comprehensive motion to dismiss briefing, and we had filed a class certification brief.

So those are the factors that courts generally look to when determining that a settlement here is fair and reasonable, and we think that they strongly support the settlement.

I'll next move to talk about the attorneys' fees

MARDMINC

request and the PSLRA award for lead plaintiff of $8,000, that we've requested unless you have any questions.

Thank you.  We are requesting a 30-percent attorneys' fee award, which comes out to $2,925,000.  We are also requesting expenses of $560,700 -- sorry $560,715.36.  All together, we spent more than 6,500 hours litigating this case, and our total loadstar was $3,254,600.48, meaning that our multiplier in the case is negative, meaning that our hours at our billable rates that we put in our papers would add up to more than the settlement fee we're getting, despite the fact that this is a contingency case where we took on considerable risk in litigating an uncertain case.

A fee of 30 percent is well within the fees awardable in comparable cases within the Second Circuit.  The general approach within the Second Circuit is a percentage of the common fund approach, which looks to whether or not the percent is a reasonable percent in light of the settlement amount, and that's often checked against the loadstar.  And here the negative loadstar is strong support for the reasonableness of the 30 percent request.

The expense request that we've put forward reflects our counted and accounted for expenses throughout the litigation.  Those are detailed in the papers that we filed. The largest expenses were expert costs relating to experts that were necessary for the litigation here; professional fees

MARDMINC

relating to litigation support, such as deposition transcript taking and so forth; and then support for discovery, including the hosting of documents and the collection of documents.

So we've looked at your Honor's previous practices, and not counted expenses for things like Westlaw, taking --

THE COURT:  Good move.

MR. BISSELL-LINSK:  Taking a 15-cent charge for copying in black and white, as opposed to a higher rate.  And we believe that the total expense request is very reasonable in light of this litigation.

The final topic I'll talk through is the PSLRA award for lead plaintiffs.  Lead plaintiffs are seeking eight thousand dollars for their work related to this case.  That reflects approximately 20 hours' time dedicated to this case, reviewing the pleadings, briefs, talking through and producing discovery and evaluating the proposed settlement.

The work was primarily performed in those 20 hours referred to the work that was performed by lead plaintiff's CEO.  Lead plaintiff is a hedge fund and whose CEO spent considerable time reviewing and working on the case as well as the chief legal officer of plaintiff.  So we believe that's a fair and reasonable award for lead plaintiff's participation and assistance in the case.

So those are all the matters I wanted to talk through. I'm happy to answer any questions you have.

MARDMINC

THE COURT:  I have no questions.

Mr. Solum, do you want to be heard?

MR. SOLUM:  I have nothing, your Honor, unless your Honor has any questions.

THE COURT:  I do not.

Ms. Lightdale.

MS. LIGHTDALE:  Same, Your Honor.  Thank you.

THE COURT:  I will approve the settlement.  The order should be out later today.

MR. BISSELL-LINSK:  Thank you.

THE COURT:  Anything further?

MR. BISSELL-LINSK:  No, your Honor.

MR. SOLUM:  No, your Honor.

THE COURT:  Thank you.

(Adjourned)